# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| WORTH BEAUTY LLC, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CASE NO. 4:17-cv-1682 |
| | § | |
| ALLSTAR PRODUCTS GROUP, | § | |
| LLC, | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

Pending before the Court in this intellectual property dispute is Defendant

Allstar Products Group LLC's ("Allstar")[1] Motion to Dismiss Plaintiff Worth

Beauty LLC's ("Worth Beauty") First Amended Complaint (the "Motion")

[Doc. # 15]. Plaintiff filed a timely response to which Defendant replied. *See*

Plaintiff's Response to Defendant's Motion to Dismiss First Amended Complaint

[Doc. # 21] and Reply Memorandum of Law in Further Support of Defendant's

---

[1] Defendant asserts that Plaintiff has sued the wrong party because a different entity, Allstar Marketing Group, LLC, is the entity actually responsible for producing the allegedly infringing products and materials at issue in this case. Motion [Doc. # 15], at ECF 15. Consequently, Defendant argues that the Complaint against it must be dismissed. There appear to be factual issues regarding what Defendant's involvement is with the products and materials at issue in this case. *See* Plaintiff's Response to Defendant's Motion to Dismiss First Amended Complaint (the "Response") [Doc. # 21], at ECF 32-33. Consequently, the Court **denies** Defendant's motion to dismiss it as a party at this time. Plaintiff's request for leave to amend its complaint to name Allstar Marketing Group, LLC as a defendant is **granted**.

Motion (the "Reply") [Doc. # 22].  The Motion is now ripe for decision.  Having considered the parties' briefing, the applicable legal authorities, and all appropriate matters of record, the Court concludes that the Motion should be **granted in part** and **denied in part**.

## I. BACKGROUND

Plaintiff Worth Beauty develops, markets and sells beauty products.  The dispute in this case relates to Plaintiff's flagship product line, an automatic motorized makeup brush system sold under the trademark blendSMART (the "blendSMART System").  The blendSMART System consists of a single automated handle and interchangeable brush heads that spin to mimic the motion of professional makeup artists.  According to Plaintiff, it owns all of the intellectual property rights relating to the blendSMART System both in the United States and internationally.

The blendSMART System debuted in April 2015 as a co-branded product with Doll 10 Beauty.  According to Plaintiff, this co-branded product was the first of its kind to reach the market and initially enjoyed a 100% market share in the automated makeup brush market.  Plaintiff launched the blendSMART System as a standalone, rather than co-branded, product in early 2016.  Since its launch, Plaintiff has spent significant resources marketing and promoting the

blendSMART System across various channels and platforms, including social media, both domestically and internationally.

In the Spring of 2017, Plaintiff became aware that Defendant was selling a rotating makeup brush called the "Airtouch Rotating Makeup Brush" (the "Airtouch Brush"). Plaintiff alleges that the Airtouch Brush is, for all intents and purposes, identical to the blendSMART System, including with respect to color, shape, design, size and appearance. According to Plaintiff, the two products are so similar that many of their most important parts, such as the rotating brush heads, are actually interchangeable across the Airtouch Brush and blendSMART System. Plaintiff also alleges that in addition to copying its actual product, Defendant has replicated its advertising, packaging and written materials, such as instruction manuals, for the blendSMART System for use in connection with selling the Airtouch Brush.

At bottom, Plaintiff contends that Defendant's misappropriation of its intellectual property rights in the blendSMART System has caused confusion among customers and those in the beauty industry regarding the relationship between the Airtouch Brush and the blendSMART System. This confusion has allegedly resulted in commercial harm to Plaintiff.

## II.    LEGAL STANDARDS

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is viewed with disfavor and is rarely granted. *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (citing *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)). The complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true. *Harrington*, 563 F.3d at 147. The complaint must, however, contain sufficient factual allegations, as opposed to legal conclusions, to state a claim for relief that is "plausible on its face." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Patrick v. Wal-Mart, Inc.*, 681 F.3d 614, 617 (5th Cir. 2012). When there are well-pleaded factual allegations, a court should presume they are true, even if doubtful, and then determine whether they plausibly give rise to an entitlement to relief. *Iqbal*, 556 U.S. at 679. Additionally, regardless of how well-pleaded the factual allegations may be, they must demonstrate that the plaintiff is entitled to relief under a valid legal theory. *See Neitzke v. Williams,* 490 U.S. 319, 327 (1989); *McCormick v. Stalder,* 105 F.3d 1059, 1061 (5th Cir. 1997).

## III.    ANALYSIS

### A.    Defendant's Motion

In the Complaint, Plaintiff asserts the following ten causes of action: federal trade dress infringement (Count I), federal unfair competition and false designation

of origin (Count II), common law trade dress infringement (Count III), federal trademark infringement (Count IV), common law trademark infringement (Count V), common law unfair competition (Count VI), common law misappropriation (Count VII), trade dress dilution under Section 16.103 of the Texas Business and Commerce Code (Count VIII), unjust enrichment (Count IX) and advertising injury through misappropriation of advertising ideas (Count X). Defendant has moved to dismiss all ten counts in the Complaint.[2] The Court first addresses Plaintiff's trade dress and trademark infringement claims. The Court then addresses the remaining claims, which are based in large part on the same allegations as Plaintiff's trade dress and trademark infringement claims, in turn.

### 1. Trade Dress Infringement

Counts I and III of the Complaint assert claims for federal and common law trade dress infringement, respectively. Defendant contends that both claims should be dismissed because Plaintiff has failed to adequately identify the trade dress elements that form the basis of its claims, and to the extent Plaintiff has adequately identified trade dress elements, those elements have not obtained any secondary meaning, and the elements alleged are purely functional. These assertions lack merit.

---

[2]     Plaintiff has stipulated to the dismissal of Count X.  Response [Doc. # 21], n.5 at ECF 28.  Count X is **dismissed with prejudice**.

Trade dress and trademark claims under federal law are governed by the Trademark Act of 1946 (the "Lanham Act"), 15 U.S.C. §§ 1051 *et seq.* Plaintiff does not allege that any of its trade dress elements or trademarks are registered. To establish trade-dress infringement under § 43(a) of the Lanham Act for an unregistered mark, a plaintiff must first demonstrate that its trade dress is either inherently distinctive or that it has acquired distinctiveness through secondary meaning. *AMID, Inc. v. Medic Alert Found. United States, Inc.*, 241 F. Supp. 3d 788, 800 (S.D. Tex. 2017) (citing *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769 (1992)). An otherwise inherently distinctive trade dress is entitled to protection only if it is also nonfunctional. *Id.* Second, to establish infringement, a plaintiff must show that a defendant's trade dress creates a likelihood of confusion with the plaintiff's. *Id.*[3] In addition to arguing that it does not have fair notice of the trade dress rights that Plaintiff seeks to vindicate in this lawsuit, Defendant also contends that Plaintiff's alleged trade dress fails to satisfy the first prong the trade dress infringement test because it has not acquired secondary meaning and is purely functional. The Court addresses these assertions in turn.

---

[3]    The standard for trade dress infringement under Texas common law is the same as the standard under the Lanham Act. *See KLN Steel Prod. Co. v. CNA Ins. Companies*, 278 S.W.3d 429, 441 (Tex. App. — San Antonio 2008, pet. denied).

Defendant's argument that it lacks fair notice of the trade dress elements that Plaintiff is seeking to protect is plainly belied by the allegations in Plaintiff's First Amended Complaint (the "Complaint"). In Paragraph 28 of the Complaint, Plaintiff explicitly identifies no less than thirty-three trade dress elements of the blendSMART System that it believes are protected, ranging from the design, size and appearance of the brush handle to the placement of logos. Complaint [Doc. # 14], ¶ 28 at ECF 12-15. The Complaint also provides Defendant fair notice of the advertising, promotional, packaging and instructional materials that appear to form part of Plaintiff's trade dress infringement claim. *See*, *e.g.*, *id.*, ¶¶ 47-55 at ECF 25-30.[4] Plaintiff has adequately identified in the Complaint the

---

[4] Defendant's reliance on the Supreme Court's decision in *Dastar Corporation v. Twentieth Century Fox Film Corporation*, 539 U.S. 23 (2003), *see* Motion [Doc. # 15], at ECF 17-18, is misplaced. Defendant incorrectly contends that *Dastar* forecloses any claims for trade dress infringement to the extent those claims are based on Plaintiff's advertising, promotional, packaging and instructional materials. In *Dastar*, the defendant copied and edited the plaintiff's video series and sold it under its own name. According to the plaintiff in that case, such conduct constituted "reverse passing off" because the defendant sold another's work under its own name. The Supreme Court held that the plaintiff in *Dastar* could not recover on its Lanham Act claim because the plaintiff was the physical producer of the videotapes and labeled the tapes as such. Therefore, the plaintiff's conduct caused no confusion about the origin of the videotapes. The Supreme Court explained that the Lanham Act is not designed to reward innovation, but rather to reduce consumer costs of shopping and making purchasing decisions by preventing competitors from copying a source-identifying mark. Thus, after *Dastar*, it is clear that a plaintiff cannot succeed in bringing a Lanham Act claim for reverse passing off solely by alleging that a defendant appropriated the plaintiff's communicative content without accreditation.

(continued…)

purportedly protectable elements that are the subject of its trade dress infringement claims.

The Court also concludes that Plaintiff has adequately alleged in the Complaint that its trade dress obtained a secondary meaning and did so before Defendant began its allegedly infringing conduct. To be legally protectable, a

---

(continued…)
In the case at bar, Plaintiff's allegations are fundamentally different than those asserted by the plaintiff in *Dastar*. Here, Plaintiff alleges that Defendant is liable for passing off, rather than reverse passing off, because Defendant is misleading the public into believing that Defendant's Airtouch Brush is manufactured by or associated with Plaintiff. Further, Plaintiff is not simply alleging that Defendant copied its advertising, promotional, packaging and instructional materials without giving Plaintiff credit, but rather that Defendant did so to mislead and confuse customers as to the relationship between Defendant and the blendSMART System. The use of a source-identifying material to create consumer confusion is categorically different than the copyright infringement claim at issue in *Dastar*. Courts that have considered the issue have held that a claim for such use of source-identifying information, including information that is copyrighted, is not foreclosed by *Dastar* and copyright principles. *See, e.g., B and F System, Inc. v. LeBlanc*, 519 F. App'x 537, 539 (11th Cir. 2013) (contrasting the case before it, in which the defendants "suggest[ed] to customers that [they] were affiliated with, or became the successors of, [plaintiff]" from *Dastar*, in which "the copied products were not sold by using the plaintiff's trademark."); *Through the Door Inc. v. J.C. Penney Co.*, 2007 WL 2265781, *1–2 (W.D. Wis. 2007) (rejecting defendant's argument that *Dastar* foreclosed plaintiff's false designation claim, because it was properly based "on the use of the copyrighted material as trade dress to falsely represent that the general merchandise it sells originates with plaintiff."). Contrary to Defendant's argument otherwise, Reply [Doc. # 22], at ECF 23-24, at this early stage of the litigation, the allegations in the Complaint, which must be taken as true, support a reasonable inference that the advertising, promotional, packaging and instructional materials that Defendant allegedly copied were source-identifying materials with respect to Plaintiff.

mark must be "distinctive." *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d

225, 237 (5th Cir. 2010). A mark can be distinctive in one of two ways:

> First, a mark is inherently distinctive if its intrinsic nature serves to
> identify a particular source . . . . Second, a mark has acquired
> distinctiveness, even if it is not inherently distinctive, if it has
> developed secondary meaning, which occurs when, in the minds of
> the public, the primary significance of a mark is to identify the source
> of the product rather than the product itself.

*Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc.*, 783 F.3d 527, 537 (5th Cir.

2015) (quoting *Wal–Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 210–11

(2000)). "Whether a mark is inherently distinctive and whether it has acquired

secondary meaning are questions of fact." *Amazing Spaces*, 608 F.3d at 234

(citing *Pebble Beach Co. v. Tour 18 I, Ltd.*, 155 F.3d 526, 537 (5th Cir. 1998)).

Paragraph 70 of the Complaint states in relevant part:

> [Plaintiff] has extensively and continuously promoted and used its
> trade dress in the United States and the State of Texas. Through that
> extensive and continuous use, [Plaintiff]'s trade dress has become a
> well-known and famous indicator of the origin and quality of
> [Plaintiff]'s automated makeup brush systems. [Plaintiff]'s trade
> dress acquired this secondary meaning before [Defendant]
> commenced its unlawful use of [Plaintiff]'s trade dress in connection
> with the infringing products.

Complaint [Doc. # 14], ¶ 70 at ECF 36. The allegations in Paragraph 70 are in

addition to the Complaint's other factual contentions that Plaintiff "has invested

substantial and significant resources to the design, creation and development of its

packaging, advertising, and promotional materials," *id.*, ¶ 15 at ECF 6, "expended

significant resources advertising and marketing" various blendSMART products, *id*., ¶ 24 at ECF 10, and "generated significant sales throughout the United States, including sales to customers in Texas," *id.* Taken together, the Complaint's factual allegations are more than sufficient to support a reasonable inference that the public, prior to the start of Defendant's allegedly infringing conduct, had enough exposure to Plaintiff's trade dress to identify it with Plaintiff as the source of blendSMART products.[5]

Defendant's arguments regarding the functionality of Plaintiff's claimed trade dress elements also are not persuasive. "[T]rade dress protection may not be claimed for product features that are functional." *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 29 (2001); *see also* 15 U.S.C. § 1125(a)(3) ("In a civil action for trade dress infringement under this chapter for trade dress not registered on the principal register, the person who asserts trade dress protection has the burden of proving that the matter sought to be protected is not functional."). "A

---

[5] Additionally, the Complaint also alleges that Defendant's use of its trade dress has been intentional, willful, and malicious, as evidenced at least by the similarity of the infringing products to Plaintiff's trade dress. Complaint [Doc. # 14], ¶ 72 at ECF 36-37. This allegation, which the Court takes as true, as it must at this stage in the litigation, bolsters Plaintiff's secondary meaning argument. *See Bulbs 4 East Side, Inc. v. Ricks, No. 14-3672*, 2016 WL 4208564, at *5 (S.D. Tex. Aug. 10, 2016) ("Courts have recognized that evidence of intentional copying shows the strong secondary meaning of [a product] because there is no logical reason for the precise copying save an attempt to realize upon a secondary meaning that is in existence.") (quoting *Berg v. Symons*, 393 F. Supp. 2d 525, 554 (S.D. Tex. 2005)).

product feature is functional, and cannot serve as a trademark, if it is essential to the use or purpose of the article or if it affects the cost or quality of an article." *Eppendorf-Netheler-Hinz GMBH v. Ritter GMBH*, 289 F.3d 351, 355 (5th Cir. 2002) (quoting *TrafFix*, 532 U.S. at 32). Under this definition, if a product feature is "the reason the device works," then the feature is functional. *Id.* (quoting *TrafFix*, 532 U.S. at 34). The Fifth Circuit has also recognized that, although functional features cannot be protected, an arbitrary combination of functional features, "the combination of which is not itself functional, properly enjoys protection." *Clearline Techs. Ltd. v. Cooper B-Line, Inc.*, 948 F. Supp. 2d 691, 701 (S.D. Tex. 2013) (quoting *Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 1119 (5th Cir. 1991), *aff'd sub nom. Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763 (1992)).

In its Motion, Defendant makes the conclusory assertion that "the design features of Plaintiff's product . . . are indisputably functional." Motion [Doc. # 15], at ECF 22-23; *see also* Reply [Doc. # 22], n.32 at ECF 20 (same). In support of its premise, Defendant argues, among other things, that "[t]he handle size and shape functions so that the consumer can adequately hold the product; the size and location of the on/off switch functions to turn the product on/off and is situated where the thumb naturally falls on the handle." *Id.* at 23. However, these are exactly the types of factual arguments that are not properly resolved on a

motion to dismiss. While Defendant's characterizations of Plaintiff's proffered

trade dress features may ultimately be proven correct, at this incipient stage of the

litigation, there is no basis for the Court to definitively conclude, as a matter of

law, those trade dress features are indisputably functional.[6] Moreover, even

assuming that many or all of trade dress elements Plaintiff cites in the Complaint

are functional, Defendant, in both its Motion and its Reply, ignores the fact that a

combination of even functional elements may be entitled to protection. *Two Pesos,*

*Inc.*, 932 F.2d at 1119; *see also* 1 MCCARTHY ON TRADEMARKS AND

UNFAIR COMPETITION § 8:2 (4th ed.) ("A defendant cannot avoid liability for

infringing a trade dress by segregating out individual elements of the trade dress as

defined by plaintiff and arguing that no one of these is valid and protectable in and

of itself."). Here, the Court cannot conclude as a matter of law that the

combination of some or all of the elements alleged by Plaintiff to comprise its

trade dress is necessarily functional. For example, it is plausible that the

combination of style lines and colors in the blendSMART System may constitute

arbitrary, non-functional features. Therefore, based on Plaintiff's factual trade

dress allegations, Plaintiff has stated a claim that at least some of its proffered trade

---

[6] For example, it is unclear why, as Defendant argues, the color of a removable brush head is necessarily functional and could not have a purpose, such as distinguishing the brush head as Plaintiff's product.

dress elements are non-functional and entitled to protection.[7] Plaintiff has adequately pleaded the first element of a trade dress infringement claim.

In sum, the allegations in the Complaint give Defendant fair notice of the trade dress elements at issue in this lawsuit and adequately allege that those elements have acquired secondary meaning and are non-functional. The Motion is **denied** with respect to Counts I and III of the Complaint.

## 2. Trademark Infringement

Counts IV and V of the Complaint assert claims for federal and common law trademark infringement, respectively. Defendant first argues that the claim in the Complaint for trademark infringement under Section 32(l) of the Lanham Act, 15 U.S.C. § 1114(1), fails as a matter of law because Plaintiff does not allege infringement of any registered trademark. Plaintiff specifically alleges in the Complaint that the Revolution Trademark is unregistered. Complaint [Doc. # 14], ¶ 92 at ECF 41. Furthermore, Plaintiff notes in the Response that Paragraph 92 of the Complaint refers to the incorrect section of the Lanham Act. *See* Response [Doc. # 21], n.3 at ECF 23 ("In [the Complaint], [Plaintiff] inadvertently

---

[7] For the same reasons, dismissal of any of Plaintiff's trade dress claims based on its interior packaging is also unwarranted at this time. While Defendant focuses on the "indisputable functionality" of a "white plastic tray" used in the blendSMART System interior packaging, Plaintiff's trade dress allegations regarding its interior packaging are broader than the color of the tray. There are material fact issues whether the other components of Plaintiff's interior packaging, including its molded lids, are purely functional, either individually or collectively.

13

referenced Section 32(1) of the Lanham Act in Count IV, rather than the applicable Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)."). To the extent Plaintiff is pursuing any claims under Section 32(1) of the Lanham Act, those claims are **dismissed** because Plaintiff fails to allege infringement of any registered trademark.

Defendant contends further that to the extent Plaintiff is asserting a claim for trademark infringement under Section 43(a) of the Lanham Act, that claim should be dismissed because such a claim is for "false designation or origin," not "trademark infringement," and Plaintiffs do not allege "false designation of origin." Reply [Doc. # 22] at ECF 10. Defendant's position is hypertechnical and unavailing. In addition to claims for false designation of origin, Section 43(a) of the Lanham Act also includes claims for the use of any "word, term, name, symbol, or device, or any combination thereof," that "is likely to cause confusion as to the affiliation, connection, or association" of two persons or product. 15 U.S.C. § 1125(a). Such a claim is substantively identical to a claim for trademark infringement under Section 32(l) of the Lanham Act. *See Amazing Spaces*, 608 F.3d at 235 ("There are two elements to a successful infringement claim under the Lanham Act. The plaintiff must first establish ownership in a legally protectable mark, and second . . . show infringement by demonstrating a likelihood of confusion.") (internal citations and quotation marks omitted); s*ee also Bd. of*

*Supervisors for Louisiana State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 474–75 (5th Cir. 2008) (applying same elements to alleged infringement of unregistered trademark). The Court will construe Count IV of the Complaint as a claim for infringement under Section 43(a) of the Lanham Act.

Defendant next argues that Plaintiff's trademark infringement claims should be dismissed because the allegations in the Complaint do not provide Defendant with fair notice of what trademarks it allegedly infringed. Defendant also contends that to the extent the Complaint adequately identifies an infringed trademark, Plaintiff's claims still fail because the asserted underlying mark is not legally protectable and the allegations of consumer confusion are inadequate as a matter of law. The Court is unpersuaded.

Regarding the question of sufficiency of Plaintiff's pleading, Counts IV and V of the Complaint allege that Defendant has infringed Plaintiff's trademarks. Defendant correctly notes that Plaintiff, in its fifty-page pleading, only specifically identifies a single trademark that Defendant allegedly infringed: "A Revolution in Makeup Application" (the "Revolution Trademark"). In its Response, Plaintiff does not identify any other trademarks relevant to its infringement claims in Counts IV and V.[8] Accordingly, the Court concludes that the Complaint provides

---

[8]      *See* Response [Doc. # 21], at ECF 23-24.

Defendant fair notice that Plaintiff is pursuing claims of infringement of the Revolution Trademark.[9] It is equally evident, however, that to the extent Plaintiff intends to assert in Counts IV and V claims for infringement of trademarks other than the Revolution Trademark, Plaintiff has failed to adequately plead such claims. Any infringement claims predicated on a trademark other than the Revolution Trademark are **dismissed**.

The Court turns to the question of whether Plaintiff has adequately alleged that Defendant infringed on the Revolution Trademark. To prevail on a trademark infringement claim under the Lanham Act, a plaintiff must show two elements: (1) the plaintiff possesses a legally protectable trademark and (2) Defendant's use of the trademark creates a likelihood of confusion as to source, affiliation, or sponsorship. *Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 450 (5th Cir. 2017).[10] Defendant asserts that the allegations in the Complaint satisfy neither of these elements. Specifically, Defendant asserts that the Revolution Trademark has not obtained any "secondary meaning" and that its allegedly infringing phrase "revolutionary rotating makeup brush that guarantees

---

[9]     *See* Complaint [Doc. # 14], ¶¶ 57, 92, and 97 at ECF 31, 41-42.

[10]     The elements of a common law trademark infringement under Texas law are the same as those under the Lanham Act. *Id.* The elements are also the same regardless of whether the underlying trademark is registered or unregistered. *Bd. of Supervisors for Louisiana State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 474–75 (5th Cir. 2008).

professional makeup artist results without the expense and time commitment," is so dissimilar from the Revolution Trademark that it is unlikely to cause consumer confusion as a matter of law. The Court addresses the elements of Plaintiff's trademark infringement claim in turn.

Defendant argues, and Plaintiff does not contest, that the phrase "A Revolution in Makeup Application," is descriptive, and not inherently distinctive. Thus, the key inquiry is whether Plaintiff has adequately alleged that the Revolution Trademark has obtained secondary meaning. In the Complaint, Plaintiff alleges that since the launch of the blendSMART product line in early 2016, Plaintiff has undertaken extensive marketing efforts using various media and platforms, both domestically and internationally, thereby exposing millions of people to blendSMART advertising. Complaint [Doc. # 14], ¶¶ 14-20 at ECF 5-9. Plaintiff further alleges that it has continuously used the Revolution Trademark in its advertising, website and other promotional materials and that the public and those in the beauty industry associate the Revolution Trademark with products produced by Plaintiff. *Id*., ¶ 33 at ECF 16. Based on these allegations, the Court concludes that Plaintiff has stated a plausible claim that the Revolution Trademark has developed secondary meaning in the marketplace and is therefore a legally protectable mark.

Defendant contends that irrespective of whether the Revolution Trademark has plausibly obtained secondary meaning in the marketplace, Plaintiff has failed to establish that the Revolution Trademark developed secondary meaning before Defendant allegedly began infringing on the mark. The Court is unpersuaded. The allegations in the Complaint support a reasonable inference that Plaintiff began using the Revolution Trademark when it launched the standalone blendSMART product line in early 2016 and that Defendant allegedly began infringing on the Revolution Trademark at some point in 2017. *Id.*, ¶ 16 at ECF 6. Even assuming, as Defendant argues, that Defendant's alleged infringement of the Revolution Trademark began less than a year after the launch of the blendSMART product line, Defendant cites no case law or authority establishing, as a matter of law, that the Revolution Trademark could not develop secondary meaning within that time period.[11] At most, Defendant's assertion in this regard raises a factual issue that is not suitable for resolution on a motion to dismiss.[12] Consequently, Defendant's

---

[11]  Defendant's citation of Section 2(f) of the Lanham Act, 15 U.S.C. § 1052, which allows the director of the U.S. Patent and Trademark Office to accept the fact that a mark has been used in commerce continuously for five years as *prima facie* evidence of distinctiveness, does not compel a different conclusion. The statute merely creates a rebuttable presumption in favor of distinctiveness after the specified period of time. It does not foreclose the possibility that distinctiveness can be obtained earlier than five years.

[12]  The same is true of Defendant's argument that Plaintiff's trade dress was incapable of developing secondary meaning given the timing of the launch of the blendSMART System and Defendant's entry into the industry.

arguments that the allegations in the Complaint fail to support a reasonable inference that the Revolution Trademark is a legally protectable mark are without merit.

Defendant's contentions regarding the second element of Plaintiff's trademark infringement claims, likelihood of confusion, are similarly unavailing. When assessing the likelihood of confusion, courts in the Fifth Circuit consider a "nonexhaustive list" of "digits of confusion," including:

> (1) the type of mark allegedly infringed, (2) the similarity between the two marks, (3) the similarity of the products or services, (4) the identity of the retail outlets and purchasers, (5) the identity of the advertising media used, (6) the defendant's intent, and (7) any evidence of actual confusion. Courts also consider (8) the degree of care exercised by potential purchasers.

*Smack Apparel Co.*, 550 F.3d at 478 (quoting *Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658, 663 (5th Cir. 2000). Importantly, "[n]o single factor is dispositive, and a finding of a likelihood of confusion need not be supported by a majority of the factors." *Id*.

As Defendant properly recognizes in its Motion, assessing the likelihood of confusion is predominately a factual inquiry. Motion [Doc. # 15], at ECF 16; Reply [Doc. # 22], at ECF 13-14; *see also Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 227 (5th Cir. 2009) (noting likelihood of confusion is "typically a question of fact"); *Elvis Presley Enterprises, Inc. v. Capece*, 141 F.3d 188, 196 (5th Cir. 1998) ("Likelihood of confusion is a question of fact reviewed for clear

error."). Defendant nevertheless argues that the Revolution Trademark and the phrase "revolutionary rotating makeup brush that guarantees professional makeup artist results without the expense and time commitment" are sufficiently dissimilar that there is no likelihood of confusion as a matter of law. The Court is unpersuaded by this argument.

At this early stage of the proceedings, the substantial facial[13] and substantive[14] similarities between the two phrases at issue warrant the conclusion that a reasonable juror could find that there is a likelihood of confusion between the phrases. Even assuming there are aspects of dissimilarity between the phrases, the Court cannot conclude that the dissimilarity is so great as to negate the need to consider the other factual "digits of confusion," particularly when the allegations in the Complaint support a reasonable inference that there are significant similarities between the blendSMART System and Airtouch Brush products, that those products are marketed to a similar customer base, and that Defendant "routinely" uses its allegedly infringing phrase in the same marketing channels utilized by Plaintiff to market its competing products. In short, there are a multitude of outstanding factual issues regarding the likelihood of confusion element of

---

[13]    Plaintiff uses the word "revolution" in the Revolution Trademark whereas Defendant uses the word "revolutionary" in its allegedly infringing phrase.

[14]    Both statements address the same commercial topic of makeup application.

Plaintiff's trademark infringement claims and, accordingly, Defendant is not entitled to a ruling that there is no likelihood of confusion as a matter of law.

The Complaint's well pled allegations satisfy the elements of a trademark infringement claim under both federal and Texas common law. Except for claims under 32(l) of the Lanham Act and claims based on trademarks other than the Revolution Trademark, the Motion is **denied** on Counts III and IV of the Complaint.

### 3. Federal Unfair Competition and False Designation of Origin

In Count II of the Complaint, Plaintiff asserts a claim for unfair designation and false designation of origin under the Lanham Act. Defendant argues that because Count II is premised on the same allegations as Plaintiff's trade dress infringement claim, Plaintiff's failure to adequately allege its trade dress infringement claim is fatal to its unfair competition and false designation of origin claim. *See Boston Prof'l Hockey Assoc., Inc. v. Dallas Cap & Emblem Mfg., Inc.*, 510 F.2d 1004, 1010 (5th Cir. 1975) (noting that "[a]s a general rule . . . the same facts which would support an action for trademark infringement would also support an action for unfair competition"); *Farouk Sys., Inc. v. Costco Wholesale Corp.*, 700 F. Supp. 2d 780, 787 (S.D. Tex. 2010) (same). The Court, however, has concluded that the allegations in the Complaint are sufficient to state claims for trademark and trade dress infringement under both federal law and Texas common

21

law.  Those same allegations are sufficient to state a claim for unfair competition and false designation of origin under the Lanham Act.  The Motion therefore is **denied** with respect to Count II.

### 4. Common Law Unfair Competition

In Count VI of the Complaint, Plaintiff asserts a claim for unfair competition under the common law of Texas.  As Defendant recognizes in the Motion, "[a] trademark infringement and unfair competition action under Texas common law presents essentially 'no difference in issues than those under federal trademark infringement actions.'"  Motion [Doc. # 15], at ECF 26 (quoting *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 235 n.7 (5th Cir. 2010)); *see also Horseshoe Bay Resort Sales Co. v. Lake Lyndon B. Johnson Improvement Corp.*, 53 S.W.3d 799, 806 n.3 (Tex. App.—Austin 2001, pet. denied) (same); *Choice Hotels Int'l, Inc. v. Patel*, 940 F. Supp. 2d 532, 538 (S.D. Tex. 2013) ("[T]he facts that support an action for trademark infringement under the Lanham Act also support [actions for false designation of origin under the Lanham Act, trademark infringement under Texas common law and unfair competition under Texas common law]"); *Philip Morris USA Inc. v. Lee*, 547 F. Supp. 2d 667, 678 (W.D. Tex. 2008) ("Generally, the same evidence that supports an action for trademark infringement under the Lanham Act also supports an action for unfair competition.") (citing *Marathon Mfg. Co. v. Enerlite Prods. Corp.*, 767 F.2d 214,

22

217 (5th Cir. 1985)). Because the factual allegations in the Complaint support a plausible claim for trademark infringement under the Lanham Act and Texas common law, the allegations in the Complaint also support a plausible unfair competition claim under Texas common law. The Motion is **denied** as to Count VI.

### 5. Common Law Misappropriation

In Count VII of the Complaint, Plaintiff asserts a claim for common law misappropriation under Texas law. Without providing any specificity, Defendant generally contends that this claim must be dismissed for the same reasons as Plaintiff's trademark and trade dress infringement claims. Defendant's argument lacks merit.

The elements of a cause of action for unfair competition by misappropriation in Texas are: "(i) the creation of plaintiff's product through extensive time, labor, skill and money, (ii) the defendant's use of that product in competition with the plaintiff, thereby gaining a special advantage in that competition (*i.e.*, a 'free ride') because defendant is burdened with little or none of the expense incurred by the plaintiff, and (iii) commercial damage to the plaintiff." *Dresser-Rand Co. v. Virtual Automation Inc.*, 361 F.3d 831, 839 (5th Cir. 2004) (quoting *United States Sporting Prods., Inc. v. Johnny Stewart Game Calls, Inc.*, 865 S.W.2d 214, 218 (Tex. App.—Waco 1993, writ denied). To the extent Defendant's argument

23

pertaining to the misappropriation claim is premised on Plaintiff's failure to adequately allege its trademark and trade dress infringement claims, for the reasons stated above, that argument is without merit.

Moreover, the factual allegations in the Complaint are sufficient to state a claim for common law misappropriation under Texas law. Plaintiff alleges that it has made a substantial investment in the design, development, manufacture and marketing of its automated makeup brush systems, Complaint [Doc. # 14], ¶¶ 12, 15, 23 at ECF 5-6, 10, that Defendant is producing and selling infringing products, *id*., ¶¶ 36, 107-108 at ECF 17, 45, that Defendant has profited from its infringing activity, *id.*, ¶ 110 at ECF 46, and that it has been damaged as a result of Defendant's conduct. *Id*., ¶¶ 71, 108 at ECF 45. These allegations, taken together, support a plausible claim for misappropriation. *YETI Coolers, LLC v. Imagen Brands, LLC*, No. 1:16-CV-00578-RP, 2017 WL 2199012, at *9 (W.D. Tex. May 18, 2017). Given the Complaint's well pled factual allegations, dismissal of Plaintiff's common law misappropriation claim is unwarranted and the Motion is **denied** on Count VII.

### 6. Trade Dress Dilution

In Count VIII of the Complaint, Plaintiff asserts a claim for trade dress dilution under Section 16.103 of the Texas Business and Commerce Code. In addition to reasserting the arguments that it made regarding Plaintiff's trade dress

infringement claims, Defendant also contends that Plaintiff's trade dress dilution claim must be dismissed because it has not adequately alleged that its trade dress is "famous," as required by the statute. Defendant's arguments are unavailing.

For the reasons discussed above, the factual allegations in the Complaint are sufficient to state claims for trade dress infringement. Defendant's assertion of its unpersuasive arguments in connection with a different claim fail for the reasons discussed above.

Defendant's arguments as to the adequacy of Plaintiff's allegations of the fame of its trade dress similarly lack merit. In addition to specifically alleging that its trade dress is famous, Complaint [Doc. # 14], ¶¶ 32, 70, 79 at ECF 16, 36, 38, the Complaint also provides significant detail of Plaintiff's extensive global marketing efforts, *id.*, ¶¶ 14-20 at ECF 5-9, including those in Texas, regarding its automated makeup brushes that occurred prior to the start of Defendant's allegedly infringing conduct. The allegations in the Complaint are adequate to support a reasonable inference that Plaintiff's trade dress was famous in Texas before Defendant launched a competing product. Defendant's factual argument to the contrary is not properly resolved on a motion to dismiss. The Motion is **denied** on Count VIII.

### 7.    Unjust Enrichment

In Count IX of the Complaint Plaintiff asserts a claim for unjust enrichment under Texas law. Defendant argues that Plaintiff's unjust enrichment claim fails as a matter of law because unjust enrichment is not a standalone cause of action under Texas law and Plaintiff has not adequately alleged an underlying infringement or unfair competition claim upon which recovery under a theory of unjust enrichment could be based. As addressed above, however, Plaintiff has in fact adequately alleged both infringement and unfair competition claims. Therefore, Defendant's argument regarding Plaintiff's unjust enrichment claim is without merit and the Motion is **denied** on Count IX.

### B.    Preemption of State Law Claims

In addition to the now-rejected argument that Plaintiff's various state law claims fail because the Complaint does not adequately allege an underlying cause of action for trademark or trade dress infringement, Defendant also contends that Counts VI (unfair competition), VII (misappropriation), VIII (trade dress dilution), and IX (unjust enrichment) are preempted by the U.S. Copyright Act (the "Copyright Act"), 17 U.S.C. § 101 *et seq.* Specifically, Defendant asserts that to the extent Plaintiff's state law claims are premised in whole or part on its alleged misappropriation of Plaintiff's written materials, including instruction manuals, advertising materials, website copy and promotional videos, such misappropriation

26

falls squarely within the purview of the Copyright Act, which governs original works of authorship fixed in any tangible medium and explicitly preempts comparable state law claims. The Court concludes that Defendant's argument is persuasive, in part.

Courts apply a two-part test to determine whether the Copyright Act preempts a state cause of action: (1) is the intellectual property at issue within the subject matter of copyright, and (2) if so, does the state law claim protect rights in that property that are equivalent to any of the exclusive rights within the general scope of copyright? 17 U.S.C. § 301(a); *see also Ultraflo Corp. v. Pelican Tank Parts, Inc.*, 845 F.3d 652, 656 (5th Cir.), *cert. denied*, 137 S. Ct. 2266 (2017). The parties do not dispute that Plaintiff's various written and graphic materials that were allegedly copied by Defendant are within the subject matter of copyright. Consequently, the key inquiry in this case is whether the second prong of the test applies to any or all of Plaintiff's state law claims. "This is determined by the 'extra elements' test, which looks at whether 'one or more qualitatively different elements are required to constitute the state-created cause of action being asserted.' If so, the state law protects rights different than those that the Copyright Act protects and there is no preemption." *Ultraflo Corp.*, 845 F.3d at 657 (internal citation omitted).

The Court concludes that the state law claims Plaintiff asserts in Counts VI (unfair competition) and VIII (trade dress dilution) are not preempted by the Copyright Act. Each of these causes of action requires additional elements beyond those needed for copyright infringement, and Plaintiff has made the necessary allegations.[15] For example, Plaintiff's unfair competition claim is premised on consumer confusion[16] and its trade dress dilution claim requires a showing of likelihood of dilution.[17] Neither of these claims is established based on Defendant's mere copying and use of its written materials and instead require qualitatively different elements (consumer confusion and likelihood of dilution, respectively). Moreover, the gravamen of these state law claims, consumer confusion and brand protection, cannot fairly be characterized as pertaining to exclusive rights within the general scope of copyright.

In contrast, the Court also concludes that Counts VII (misappropriation) and IX (unjust enrichment) are preempted by the Copyright Act to the extent those claims are based on Defendant's alleged copying of Plaintiff's written materials.

---

[15] Copyright infringement claims have two basic elements: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. *Sanchez v. Hacienda Records & Recording Studio, Inc.*, 42 F. Supp. 3d 845, 851 (S.D. Tex. 2014).

[16] *See* Complaint [Doc. # 15], ¶ 101 at ECF 43.

[17] *See Horseshoe Bay Resort Sales Co. v. Lake Lyndon B. Johnson Improvement Corp.*, 53 S.W.3d 799, 811 (Tex. App. — Austin 2001, pet. denied).

In cases where the intellectual property at issue is within the subject matter of copyright, the Fifth Circuit has repeatedly held that a cause of action for misappropriation under Texas law "does not afford protection materially different from federal copyright law." *Ultraflo Corp.*, 845 F.3d at 657; *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 787-789 (5th Cir. 1999). Lower courts in the Fifth Circuit have reached a similar conclusion regarding claims for unjust enrichment. *See Recursion Software, Inc. v. Interactive Intelligence, Inc.*, 425 F. Supp. 2d 756, 769 (N.D. Tex. 2006) ("Courts generally find that claims for unjust enrichment and *quantum meruit* are preempted by the Copyright Act to the extent they are based on a defendant's violation of an exclusive right protected by the copyright law."); *Asunto v. Shoup*, 132 F. Supp. 2d 445, 453 (E.D. La. 2000) ("Claims for unjust enrichment usually are held to be pre-empted by the Copyright Act."). Although Plaintiff attempts to distinguish its misappropriation and unjust enrichment claims on the grounds that the *effect* of Defendant's misuse is confusion among consumers and those in the industry, confusion is not an element of either claim. Moreover, either claim is for all intents and purposes satisfied by Defendant's mere copying and use of Plaintiff's written materials. Therefore, to the extent Plaintiff's misappropriation and unjust enrichment claims are premised on Defendant's copying of its written materials, those claims are foreclosed by the Copyright Act and the Motion is **granted** with respect to those claims.

## IV.   CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the Motion [Doc. # 15] is **GRANTED** as to the entirety of Count X of the Complaint (advertising injury through misappropriation of advertising ideas), in part as to Counts III (common law trademark infringement) and IV (federal trademark infringement) to the extent such claims are predicated on a violation of Section 32(l) of the Lanham Act or infringement of a trademark other than the Revolution Trademark and in part as to Counts VII (misappropriation) and IX (unjust enrichment) to the extent such claims are predicated on the copying of Plaintiff's written materials, including instruction manuals, advertising materials, website copy and promotional videos.  Count X is **DISMISSED WITH PREJUDICE** in its entirety, Counts III and IV are **DISMISSED WITHOUT PREJUDICE** to the extent they are based on Section 32(l) of the Lanham Act and non-Revolution Trademark claims, and Counts VII and IX are **DISMISSED WITH PREJUDICE** to the extent they are based on Defendant's copying of Plaintiff's written materials, including instruction manuals, advertising materials, website copy and promotional videos.  It is further

**ORDERED** that in all other respects, the Motion [Doc. # 15] is **DENIED**. It is further

**ORDERDED** that Plaintiff's request for leave to amend its Complaint is

**GRANTED**. To the extent Plaintiff wishes to amend its Complaint, it shall file the

amended pleading as a separate docket item within **fourteen (14) days** of the date

hereof.

SIGNED at Houston, Texas, this ⎯13⎯ day of **November, 2017**.

NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE