**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **WORTH BEAUTY LLC,** | § | |
| | § | |
| *PLAINTIFF*, | § | **CASE NO. 4:17-cv-01682** |
| **v.** | § | |
| | § | (**JUDGE NANCY F. ATLAS**) |
| **ALLSTAR PRODUCTS GROUP, LLC,** | § | |
| **and ALLSTAR MARKING GROUP,** | § | |
| **LLC** | § | |
| | § | **JURY TRIAL REQUESTED** |
| *DEFENDANTS.* | § | |

**DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES
AND COUNTERCLAIMS TO THE SECOND
AMENDED ORIGINAL COMPLAINT**

COME NOW Allstar Products Group, LLC and Allstar Marketing Group, LLC, incorrectly named Allstar Marking Group, LLC (collectively, "Defendants") and file this Answer, Affirmative Defenses and Counterclaims to the Second Amended Original Complaint against Worth Beauty LLC, and shows the Court as follows:

**ORIGINAL ANSWER**

**A.      RESPONSE TO SECOND AMENDED ORIGINAL COMPLAINT**

Plaintiff, Worth Beauty LLC ("Worth Beauty" or "Plaintiff") files this Second Amended Original Complaint against Defendants and would show the Court the following:

**ANSWER:**  No response is required to the initial paragraph of the Second Amended Original Complaint.

**I.      PARTIES**

1.      Plaintiff Worth Beauty is a Virginia limited liability company with its principal place of business at 3101 Richmond Avenue, Suite 120, Houston, Texas 77098. All pleadings

may be served on Worth Beauty through its attorney-in-charge, David K. Anderson, Anderson &

Cunningham, P.C., Four Houston Center, 1221 Lamar, Suite 1115, Houston, Texas 77010.

**ANSWER:** Defendants deny knowledge or information sufficient to form a belief as

to the truth of the allegations in Paragraph 1 of the Complaint.

2.       Defendant Allstar Products Group LLC, is a New York limited liability company

with its principal place of business at 2 Skyline Drive, Hawthorne, New York 10532. All

pleadings may be served on Allstar through its attorney in charge, Robert P. Latham, Jackson

Walker LLP, 2323 Ross Avenue, Suite 600, Dallas, Texas 75201.

**ANSWER:** Defendants admit the allegations in the first sentence of Paragraph 2 of the

Complaint and deny the remaining allegations.

3.       Defendant Allstar Marketing Group, LLC, is a New York limited liability

company with its principal place of business at 2 Skyline Drive, Hawthorne, New York 10532.

**ANSWER:** Defendants admit the allegations contained in Paragraph 3.

## II.     NATURE OF ACTION, JURISDICTION AND VENUE

4.       This is an action for (a) federal trade dress infringement under the Lanham Act,

15 U.S.C. §§ 1051 *et seq.*; (b) federal unfair competition and false designation of origin under

the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*; (c) common law trade dress infringement; (d) federal

trademark infringement; (e) common law trademark infringement; (f) common law unfair

competition; (g) common law misappropriation; (h) trade dress dilution under TEX. BUS. &

COM. CODE §16.103; (i) unjust enrichment; and (j) federal copyright infringement under the

Copyright Act of 1976, 17 U.S.C. §§ 101, *et seq*. The state law claims are substantially related to

the claims arising under federal law; and as a result, this Court has ancillary jurisdiction over

those claims.

**ANSWER:** The allegations in Paragraph 4 of the Complaint contain legal conclusions to which no response is required. To the extent Paragraph 4 of the Complaint purports to assert factual allegations, Defendants deny each and every such allegation.

5.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338, and 1367. This Court has federal question jurisdiction over this case because Worth Beauty has brought claims against Defendants under the Lanham Act, 15 U.S.C. §§ 1051 *et seq*., and the Copyright Act, 17 U.S.C. §§ 101, *et seq*. This court has the power to resolve the related state law claims under principles of pendent, supplemental and/or ancillary jurisdiction. This Court also has subject matter jurisdiction of this case under § 1332 because there is diversity of citizenship and the amount in controversy exceeds $75,000.

**ANSWER:** The allegations in Paragraph 5 of the Complaint contain legal conclusions to which no response is required. To the extent Paragraph 5 of the Complaint purports to assert factual allegations, Defendants deny each and every such allegation.

6.     The Court has specific and general personal jurisdiction over Defendants pursuant to the Texas Long Arm Statute for the following reasons: Defendants are present within or have minimum contacts within the State of Texas and the Southern District of Texas; Defendants have purposefully availed itself of the privileges of conducting business in the State of Texas and the Southern District of Texas; Defendants regularly conduct and/or solicit business and engages in other persistent courses of conduct within the State of Texas and within the Southern District of Texas; Defendants have derived substantial revenues from its business activities, including their infringing acts, occurring within the State of Texas and the Southern District of Texas; and Plaintiff's causes of action arise directly from Defendants' activities in the State of Texas and in the Southern District of Texas.

**ANSWER:**  The allegations in Paragraph 6 of the Complaint contain legal conclusions to which no response is required.  To the extent Paragraph 6 of the Complaint purports to assert factual allegations, Defendants deny each and every such allegation.

7.     More specifically, Defendants directly and/or through authorized intermediaries, ships, distributes, offers for sale, sells, leases, markets, and/or advertises infringing products in the State of Texas, and the Southern District of Texas, including but not limited to the marketing, offering for sale, sale, and distribution of Defendants' Airtouch rotating makeup brush. Defendants solicit customers for its products in the State of Texas and in the Southern District of Texas through their Airtouch Brush website (www.airtouchbrush.com), national advertising, infomercials on national television, and appearances on national televised shopping networks. Defendants sell its products, including the infringing Airtouch rotating makeup brush, in the State of Texas and the Southern District of Texas through internet websites, such as the Airtouch Brush websites (www.airtouchbrush.com and www.airtouchbrushtips.com), HSN, Walmart, Bed Bath & Beyond, and AmeriMark Direct LLC's Time for Me thereby committing conduct in this state that is in violation of both state and federal law.

**ANSWER:**  Defendants deny each and every allegation contained in Paragraph 7 of the Complaint, except Defendants admit that defendant Allstar Marketing Group, LLC manufactures and sells a rotating makeup brush named the "Airtouch Rotating Makeup Brush" ("Airtouch").

8.     Defendants have committed infringing acts both inside and outside the State of Texas and the Southern District of Texas that have caused injury to Worth Beauty within this state, and Defendants regularly do or solicit business, engage in other persistent course of conduct, or derive substantial revenue from goods used or consumed in the State of Texas and

the Southern District of Texas, or expect or should reasonably expect the infringing acts at issue

herein to have consequence in this state.

> **ANSWER:**  Defendants deny each and every allegation in Paragraph 8 of the Complaint.

9.      Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b), 1391(c),

1400(a) and/or 1400(b). Defendants have transacted business in this judicial district, and have

directly and indirectly committed and/or induced acts of copyright, trademark, and trade dress

infringement in this district. Additionally, Worth Beauty is the owner of intellectual property,

including copyrights, trademarks, and trade dress that are the subject of this litigation, and Worth

Beauty resides in the Southern District of Texas. Worth Beauty developed the blend**SMART**

makeup brush and its associated intellectual property, including copyright protected packaging,

product instructions and inserts, advertising, and website content, trademarks, and trade dress, at

least in part in the Southern District of Texas. Worth Beauty commercialized and used the

protected intellectual property in the Southern District of Texas. In addition, Defendants

misappropriated intellectual property developed and maintained in Houston, Texas.

> **ANSWER:**  The allegations in Paragraph 9 of the Complaint contain legal conclusions to
> which no response is required.  To the extent Paragraph 9 of the Complaint purports to
> assert factual allegations, Defendants deny each and every such allegation, except deny
> knowledge or information sufficient to form a belief as to the truth of the allegations that
> Plaintiff resides in the Southern District of Texas or otherwise purports to set forth
> contacts and activities in the Southern District of Texas.

## IV.      FACTUAL BACKGROUND

10.      Worth Beauty develops, markets, and sells cutting-edge beauty products.  The

company's strategy is to combine technology with innovative design to create beauty products

that are easy to use, more effective than conventional tools or methods, and elegant in design and

style. It is a growing company that is expanding its products through innovation. Worth Beauty's mission is to achieve for makeup application what other automated tools have done for skincare and oral care.

**ANSWER:**  Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 10 of the Complaint.

11.     The company's flagship product line is a first-of-a-kind Automated Makeup Brush System™ for the application of makeup and other beauty products, which is sold under the trademark blend**SMART**. The blend**SMART** automatic motorized makeup brush systems represent a breakthrough in the beauty industry. Worth Beauty developed the blend**SMART** brush system, and now markets and sells the blend**SMART** brush system both domestically and internationally. Worth Beauty is the owner of all intellectual property rights relating to the blend**SMART** automated makeup brush system, including trademarks, copyrights, and patents.

**ANSWER:**  Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 11 of the Complaint.

12.     Worth Beauty's blend**SMART** rotating makeup brush system includes an automated handle and interchangeable brush heads. The removable and interchangeable brush heads spin at approximately 190 RPMs and mimic the motion of professional makeup artists to deliver flawless blending. Worth Beauty currently offers the original blend**SMART** rotating makeup brush system, the recently introduced blend**SMART**$^2$ rotating makeup brush system, and a number of additional blend**SMART** interchangeable brush heads for the blend**SMART** and for the blend**SMART**$^2$. The offered interchangeable brush heads include a foundation brush head, blush brush head, definer brush head, powder brush head, and full coverage and finishing brush head. These products allow the customer to easily change out the brush head, while utilizing one handle.

**ANSWER:**  Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 12 of the Complaint.

13.    Worth Beauty has invested substantial and significant resources to the design of its automated makeup brush systems, including hiring a product designer and other designers/consultants and specialists to assist in selecting the product's design, shape, size, color, and appearance.

**ANSWER:**  Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 13 of the Complaint.

14.    In April 2015, the blend**SMART** rotating makeup brush debuted on QVC, a television network, specializing in televised home shopping. Worth Beauty launched the blend**SMART** brush as a co-branded product with Doll 10 Beauty, and the Doll 10 Beauty blend**SMART** Rotating Makeup Brush System was featured on QVC's domestic channel as well as QVC's international channels in England, Italy, and Germany. Initially, the product was exclusively available through QVC for a period of six (6) months as required by QVC policy. The blend**SMART** product was very well received by customers and the beauty industry.  The Doll 10 Beauty blend**SMART** Rotating Makeup Brush System had complete market share in the automated makeup brush market at that time. And significantly, Worth Beauty's blend**SMART** had the first to market or head start advantage.

**ANSWER:**  Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 14 of the Complaint.

15.    Worth Beauty launched the blend**SMART** product line by itself in early 2016. The blend**SMART²** product line was introduced in January 2017.  Today, the blend**SMART** and blend**SMART²** brush systems and the additional removable and interchangeable brush heads are

available online through the company's website.[1]   Worth Beauty's blend**SMART** and blend**SMART²** products are also available for sale online through Sephora's website[2] and through websites of domestic and international authorized dealers.[3]   The blend**SMART** and blend**SMART²** products may also be purchased at domestic and international brick and mortar prestige boutiques.

> **ANSWER:**  Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 15 of the Complaint.

16.    As an integral part of its efforts to market, advertise, distribute and sell the blend**SMART** and blend**SMART²** products, Worth Beauty designed and developed (1) original packaging for its automated makeup brush systems, including the blend**SMART** and blend**SMART²**; (2) original packaging for each of the additional removable interchangeable brush heads for the blend**SMART** and blend**SMART²**; (3) the interior product packaging, including the product tray and the molded lid that hold the automated makeup brush systems; (4) product inserts or instructions for the blend**SMART** and blend**SMART²** automated brush systems, including product graphics and instructions that accompany each product; (5) blend**SMART** and blend**SMART²** product advertising; and (7) the blend**SMART** website that contains extensive product photographs, graphics, instructions, and product descriptions. Worth Beauty has invested substantial and significant resources to the design, creation, and development of its packaging, advertising, and promotional materials, including hiring graphic

---

[1]  https://www.blendsmart.com/
[2]  http://www.sephora.com/blendsmart
[3]  https://www.dermstore.com/profile_blendSMART_504383.htm; http://www.amazon.com;
https://www.hbbeautybar.com/collections/blendsmart;
https://www.dillards.com/brand/blendSMART;
http://www.vonmaur.com/Results.aspx?md=s&search=blendsmart&rt=1;

artists and designers to create the packaging, product inserts and instructions, and advertising under Worth Beauty's direction.

**ANSWER:**  Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 16 of the Complaint.

17.    Before the Defendants' misconduct, which started in 2017, Worth Beauty undertook extensive efforts to advertise and market the blend**SMART** automated makeup brush system.   Worth Beauty promoted and publicized the blend**SMART** product line on the blend**SMART** website,[4] blend**SMART** Instagram,[5] blend**SMART** Facebook,[6] blend**SMART** twitter.[7] Worth Beauty promoted the blend**SMART** automated makeup brush system through print advertising and influencer marketing, including sending hundreds of samples to influencers in 2016 to build brand awareness; it entered branding/beauty contests and promoted the awards and accolades the blend**SMART** brush had received, including Trendsetters in Cosmoprof North America and Italy, #Beauty 2.0 LA – Best Start up, QVC Consumer Choice Award; it created additional branding in terms of accessories, including shirts, tumblers, mirrors; it exhibited the blend**SMART** automated makeup brush system at conferences, including Ipsy Beauty in San Francisco, Dallas Beauty Show, and Comosprof North America, thereby exposing thousands of beauty industry insiders to the blend**SMART** automated makeup brush system; it directed press releases to hundreds of media outlets; it created brand point of sale displays for in-store launches, it hired social media consultants; it launched digital ad campaigns and social media ad campaigns; it promoted blend**SMART** through beauty bloggers and third-party social media sites; and it hired professionals to run digital ads at the launch of blend**SMART** in January 2016.

---

[4]  https://www.blendsmart.com/
[5]  @blendSMART.com
[6]  www.facebook.com/blendSMART
[7]  twitter.com/blendsmart

**ANSWER:**  Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 17 of the Complaint, except deny that Defendants engaged in any misconduct.

18.     The blend**SMART** brush has been featured and sold on Sephora's website, one of the largest beauty retailers, thereby exposing the blend**SMART** to Sephora's customer base. The blend**SMART** product has also been placed and sold on websites of other domestic and international authorized dealers, including HB Beauty Bar and DermStore and placed and sold at domestic and international brick and mortar prestige boutiques, including Von Maur, The Cosmetic Market, Dillards, Magpie Gifts, Stanley Korshak, Kuhl-Linscomb, Woo Cosmetics, Maison Weiss, Beauty Box, True Beauty, J Joffmans, DermStore, Beautique, ME21 Beauty Bar, Marta's and Adelaid's.

**ANSWER:**  Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 18 of the Complaint.

19.     As part of its marketing and promotion efforts for the blend**SMART** brush system, Worth Beauty created and published three blend**SMART** product introduction and tutorial videos, including (1) an introductory product video that describes and demonstrates the blend**SMART** brush system, which was published on May 25, 2016;[8] (2) a liquid foundation tutorial that shows consumers how to use the blend**SMART** brush to apply liquid foundation, which was published  on March 14, 2016;[9] and (3) a powder foundation tutorial that shows consumers how to use the blend**SMART** brush to apply powder foundation, which was also published on March 14, 2016.[10] Worth Beauty has subsequently produced and uploaded additional product videos, including a blend**SMART** product video, which was published on

---

[8]   https://www.youtube.com/watch?v=KP-MPAb0muo
[9]   https://www.youtube.com/watch?v=wdYS2UOsE_k
[10]  https://www.youtube.com/watch?v=Q1oG8gWV3ik

May 18, 2017, and which now has almost 40,000 views.  The Doll 10 blend**SMART** automated makeup brush system has also been featured and offered for sale on QVC's domestic channel as well as QVC's international channels in England, Italy, Germany, and France, and the Doll 10 blend**SMART** was featured and offered for sale on QVC's domestic and international websites.

**ANSWER:**  Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 19 of the Complaint.

20.    The blend**SMART** automated makeup brush system has been featured in the Wallstreet Journal[11] and in New Beauty, Real Simple, Seventeen, Vogue France, Vogue Arabia, and InStyle magazines. The blend**SMART** automated makeup brushes have also been featured on Bustle.com,[12]    livingly.com,[13]    Buzzfeed.com,[14]    familycircle.com,[15]    People.com,[16] fabfitfun.com,[17] poposugar.com,[18] fashionspot.com,[19] and beauty website Joyus.com.[20]

**ANSWER:**  Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 20 of the Complaint.

21.    The blend**SMART** automated makeup brush system has been the subject of reviews and presentations on blogs, YouTube channels, and Instagram. Worth Beauty's automated makeup brush system has been viewed close to 4 million times on YouTube through numerous product reviews and presentations.

---

[11] https://www.blendsmart.com/wp-content/uploads/2017/02/WSJ-Off-Duty-1.28.17-D3.compressed.pdf
[12] https://www.bustle.com/articles/174173-7-beautyblender-alternatives-that-are-just-as-great-as-the-famous-sponge
[13] http://www.livingly.com/Avoid+Holiday+Party+Beauty+Disasters+With+These+Expert+Tips/articles/bPRh8Hq-igi/Bronze+With+Caution
[14] https://www.buzzfeed.com/kristinchirico/theres-a-special-makeup-brush-you-can-use-if-you-really-suck?utm_term=.kcLMWDm15#.sm5K2P8mQ
[15] http://www.familycircle.com/style/beauty/our-favorite-new-products-from-cosmoprof/?page=4
[16] http://people.com/style/blendsmart-automated-makeup-brush-starter-set-joyus-discount/
[17] https://fabfitfun.com/magazine/tech-beauty-products/
[18] https://www.popsugar.com/tech/photo-gallery/43398416/image/43398430/blendSMART-Foundation-Brush
[19] http://www.thefashionspot.com/beauty/742081-beauty-gadgets-tools/#/slide/3
[20] https://www.joyus.com/beauty/catalog/1-63881/blendsmart-automated-makeup-brush-starter-set

**ANSWER:** Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 21 of the Complaint.

### WORTH BEAUTY'S TRADE DRESS

22.     Worth Beauty, long prior to the acts complained of herein, has been engaged in interstate commerce and foreign commerce by virtue of the on-going sale and merchandising of the distinctive blend**SMART** automated makeup brushes. Worth Beauty launched the blend**SMART** product in 2015. At that time, Worth Beauty believes that it was the only automated makeup brush. The Doll 10 blend**SMART** had complete market share in the automated makeup brush market at that time. And significantly, Worth Beauty's blend**SMART** had the first to market or head start advantage.

**ANSWER:** Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 22 of the Complaint, except deny that Plaintiff was the first to market and sell an automated makeup brush and/or had a "first to market or head start advantage."

23.     Worth Beauty has acquired intellectual property rights in the Doll 10 blend**SMART**, the original blend**SMART**, the blend**SMART,** and blend**SMART**[2] automated makeup brush systems, including the inherently unique, distinctive and non-functional design of the automated makeup brush systems.  The individual features and elements of Worth Beauty's automated makeup brush systems; the combination of such features and elements; and the look, appearance, and image of the product, including its packaging, product instructions and packaging inserts, advertising, website content, color schemes, layout, font selection, marks, logos, and catch phrases, taken as a whole and individually, identify the brush as originating exclusively with Worth Beauty.  This trade dress has developed a secondary meaning and is

recognized in the marketplace. The public associates this trade dress with Worth Beauty's Doll 10 blend**SMART**, the original blend**SMART**, the blend**SMART**, and blend**SMART²** products.

> **ANSWER:** Defendants deny each and every allegation in Paragraph 23 of the Complaint.

24. Worth Beauty has invested substantially in the design, development, manufacture and marketing of its automated makeup brush systems. Worth Beauty has spent considerable resources to develop the goodwill associated with these products and their associated intellectual property. As a result, it has substantial economic value and the potential to acquire a great deal more economic value.

> **ANSWER:** Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 24 of the Complaint.

25. Worth Beauty has been selling the blend**SMART** automated makeup brush systems with its distinctive trade dress in interstate commerce since 2015. Worth Beauty has expended significant resources advertising and marketing the Worth Beauty's Doll 10 blend**SMART**, the original blend**SMART**, the blend**SMART**, and blend**SMART²**. Worth Beauty has generated significant sales throughout the United Sates, including sales to customers in Texas. Since the end of 2016, Worth Beauty has sold over 90,000 automated makeup brush systems.

> **ANSWER:** Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 25 of the Complaint.

26. Worth Beauty and its products have generated much publicity and buzz in the beauty industry through all forms of social media, including YouTube, Instagram, Twitter and Facebook. Worth Beauty created the blend**SMART** brand name, trademarked the brand name

and marketed its product lines under the blend**SMART** mark and brand name in order to tie the brand to its high quality product in the mind of the consuming public and thereby establish goodwill in the beauty market for the brand and the blend**SMART** products.  Worth Beauty promoted the brand and marketed its products through various media, retail beauty and consumer outlets, all of which have acted to build the good will of the business of Worth Beauty in the blend**SMART** product line and increase the recognizability of the blend**SMART** automated makeup brushes and their trade dress.   By virtue of its merchandising and sale of the blend**SMART** automated makeup brush system, the distinctive trade dress of the blend**SMART** automated makeup brush, as well as the blend**SMART**$^2$ automated makeup brush, has come to be associated with Worth Beauty as  the source of the blend**SMART** automated makeup brushes.

> **<u>ANSWER</u>:**  Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 26 of the Complaint, except deny the allegation that "[b]y virtue of its merchandising and sale of the blendsmart automated makeup brush system, the distinctive trade dress of the blendsmart automated makeup brush, as well as the blendsmart2 automated makeup brush, has come to be associated with Worth Beauty as the source of the blendsmart automated makeup brushes."

27.    The following are exemplary images of the Doll 10 blend**SMART** automated makeup brush system (top) and the original blend**SMART** automated makeup brush system (bottom):





**ANSWER:** Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 27 of the Complaint.

28. The following is an exemplary image of the blend**SMART** automated makeup brush system introduced in 2016 (top) and the blend**SMART**$^2$ automated makeup brush system introduced in January 2017 (bottom):



**ANSWER:** Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 28 of the Complaint.

29. Worth Beauty has trade dress rights in the design, style and appearance of Worth Beauty's Doll 10 blend**SMART**, the original blend**SMART**, the blend**SMART**, and blend**SMART**$^2$ automated makeup brush systems, including but not limited to the following:

(1) the design, size, and appearance of the fully assembled Doll 10 blend**SMART** automated makeup brush system and the original blend**SMART** automated makeup brush system, including the handle, base cap, and brush head;

55

(2)     the design, size, and appearance of the fully assembled blend**SMART** automated makeup brush system and the blend**SMART**$^2$ automated makeup brush system, including the handle, base cap, and brush head;

(3)     the design, size, and appearance of the brush handle of the blend**SMART** automated makeup brush system and the blend**SMART**$^2$ automated makeup brush system;

(4)     the design, size, and appearance of the brush handle of the Doll 10 blend**SMART** automated makeup brush system and the original blend**SMART** automated makeup brush system;

(5)     the design, appearance and placement of the taper in the handle and base cap of the blend**SMART** automated makeup brush system and blend**SMART**$^2$ automated makeup brush system;

(6)     the design, appearance and placement of the taper in the handle and base cap of the Doll 10 blend**SMART** automated makeup brush system and the original blend**SMART** automated makeup brush system;

(7)     the curve or curved indentation, and the size and placement of the curve or curved indentation, in the handle of the Doll 10 blend**SMART** automated makeup brush system and the original blend**SMART** automated makeup brush system;

(8)     the curve or curved indentation, and the size and placement of the curve or curved indentation, in the handle of the blend**SMART** automated makeup brush system and the blend**SMART**$^2$ automated makeup brush system;

(9)     the design, size, appearance, and placement of the base or end caps of the blend**SMART** and blend**SMART**$^2$ automated makeup brush systems, including the end cap's flared bottom;

(10)    the design, size, appearance, and placement of the base or end caps of the Doll 10 blend**SMART** automated makeup brush system and original blend**SMART** automated makeup brush system, including the end cap's rounded bottom;

(11)    the design, appearance, and placement of the style line around the top of the base or end cap of the Doll 10 blend**SMART** automated makeup brush system and the original blend**SMART** automated makeup brush system;

(12)    the design, appearance, and placement of the style line around the top of the base or end cap of the blend**SMART** automated makeup brush system and the blend**SMART**$^2$ automated makeup brush system;

55

(13)     the design, size, appearance, and placement of the on-off switch on the handles of the Doll 10 blend**SMART** automated makeup brush system and the original blend**SMART** automated makeup brush system;

(14)     the design, size, appearance, and placement of the on-off switch on the handles of the blend**SMART** automated makeup brush system;

(15)     the design, size, appearance, and placement of the on-off switch on the handles of the blend**SMART**$^2$ automated makeup brush system;

(16)     the design, appearance, and placement of the style line around the top of the handle (between the handle and the brush head) of the Doll 10 blend**SMART** automated makeup brush system and the original the blend**SMART** automated makeup brush system;

(17)     the design, appearance, and placement of the style line around the top of the handle (between the handle and the brush head) of the blend**SMART** automated makeup brush system and of the blend**SMART**$^2$ automated makeup brush system;

(18)     the visual connection and relationship between the curves, tapers, and lines of the Doll 10 blend**SMART** automated makeup brush system and the original the blend**SMART** automated makeup brush system;

(19)     the visual connection and relationship between the curves, tapers, and lines of the blend**SMART** automated makeup brush system and the blend**SMART**$^2$ automated makeup brush system;

(20)     the design, style, and appearance of these curves, tapers, and lines in the Doll 10 blend**SMART** automated makeup brush system and the original the blend**SMART** automated makeup brush system;

(21)     the design, style, and appearance of these curves, tapers, and lines in the blend**SMART** automated makeup brush system and blend**SMART**$^2$ automated makeup brush system;

(22)     the design, appearance, and placement of the upper portion, middle portion and bottom portion of the handle of the Doll 10 blend**SMART** automated makeup brush system and the original blend**SMART** automated makeup brush system;

(23)     the design, appearance, and placement of the upper portion, middle portion and bottom portion of the handle and base cap of the blend**SMART** automated makeup brush system and the blend**SMART**$^2$ automated makeup brush system;

(24)     the overall look and appearance of the fully assembled Doll 10 blend**SMART** automated makeup brush system and the original blend**SMART** automated makeup brush system;

(25)    the overall look and appearance of the fully assembled blend**SMART** automated makeup brush system;

(26)    the overall look and appearance of the fully assembled blend**SMART**$^2$ automated makeup brush system;

(27)    the placement of the logo on the Doll 10 blend**SMART** automated makeup brush system and the original blend**SMART** automated makeup brush system;

(28)    the placement of the logo on the blend**SMART** automated makeup brush system;

(29)    the placement of the logo on the blend**SMART**$^2$ automated makeup brush system;

(30)    the overall appearance of the Doll 10 blend**SMART** foundation brush head and the original blend**SMART** foundation brush head (including color);

(31)    the overall appearance of the blend**SMART** foundation head (including color), the blush brush head, the full coverage foundation finishing brush head, and defining brush head (including color), and powder brush head;

(32)    the overall appearance of the blend**SMART**$^2$ foundation head (including color), the blush brush head, the full coverage foundation finishing brush head, and defining brush head (including color), and powder brush head; and

(33)    the interior product packaging, including the product tray and the molded lid that hold the automated makeup brush systems.

**ANSWER:**  Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 29 of the Complaint.

30.    Worth Beauty's automated makeup brush works by imitating the motions of a professional makeup artist.  The rotating head allows a consumer to glide the brush across her face to apply makeup to achieve a look, finish or coverage that is superior to that achieved by the consumer's fingers or by a typical makeup brush.  The rotating feature of the blend**SMART** device provides the functionality; whereas, the size, dimensions, and shape and other design elements of the distinctive blend**SMART** automated makeup brushes and brush heads gives the blend**SMART** products their distinctive look and design characteristics. There is no reason to

copy the blend**SMART** brush design and trade dress other than to trade off the brand and goodwill that Worth Beauty has developed in the beauty products market.

> **ANSWER:**  Defendants deny each and every allegation in Paragraph 30 of the Complaint, except deny knowledge or information sufficient to form a belief as to the truth of the allegations that "Worth Beauty's automated makeup brush works by imitating the motions of a professional makeup artist.  The rotating head allows and consumer to glide the brush across her face to apply makeup to achieve a look, finish or coverage that is superior to that achieved by the consumer's fingers or by a typical makeup brush," and admit that the rotating feature of the blendsmart device is functional, along with the rest of the features of the blendsmart and related products of Plaintiff.

31.    There are a number of automated make-up applicators that have their own design that differentiates their products from the competitors.  For example, automated makeup tools in today's beauty market include the Clarisonic Sonic Foundation Makeup Brush, the Color Me Foundation Applicator Pro Edition, and the Clinique Sonic System Airbrushed Finish Liquid Foundation Applicator and Device, all of which are described as automated makeup applicators that are intended to achieve or replicate the techniques of a professional makeup artist.  These products have similar purpose and function, but unlike Defendants' Airtouch brush, they do not pass themselves off as blend**SMART** brush.

> **ANSWER:**  Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 31 of the Complaint, except admit that there are number of automated makeup applicators on the market that have the same purpose, function and design as Plaintiff's.

32. Defendants' slavish copying of Worth Beauty's automated makeup brush systems cannot be justified; and its only purpose is to leverage the reputation and goodwill of Worth Beauty's business. Defendants have replicated the design of Worth Beauty's automated makeup brush systems virtually down to the most precise detail. Defendants' infringing products are nearly indistinguishable from Worth Beauty's products, only with minor variations that no ordinary consumer would recognize. Defendants have utilized Worth Beauty's trade dress to unfairly and quickly build its business in the automated makeup applicator market. Other beauty product companies are marketing and selling automated makeup applicators that perform a similar function without resorting to copying Worth Beauty's design and trade dress.

**ANSWER:** Defendants deny each and every allegation in Paragraph 32 of the Complaint, except admit that other beauty product companies are marketing and selling automated makeup applications that have the same purpose, function and design as Plaintiff's.

33. As a result of Worth Beauty's exclusive, continuous and substantial use, advertising, and sales of automated makeup brush systems and additional brush heads bearing Worth Beauty's trade dress, and the publicity and attention that have been paid to Worth Beauty's trade dress, Worth Beauty's trade dress has become well known to or famous in the market and has acquired valuable goodwill and secondary meaning in the market place, as consumers have come to uniquely associate them as source identifiers of Worth Beauty.

**ANSWER:** Defendants deny each and every allegation in Paragraph 33 of the Complaint.

## WORTH BEAUTY'S TRADEMARKS

34.     Worth Beauty has developed trademarks that it has continuously used to promote and market its blend**SMART** products, including "A Revolution in Makeup Application™" and "Natural Looking Results with Confidence™."   Worth Beauty has adopted and continuously used the trademark "A revolution in makeup application™" on the blend**SMART** packaging, advertising, website, and promotional materials.   Worth Beauty has acquired ownership of these trademarks by adopting and continuously using these trademarks in such a way that the public and the industry associates these marks with Worth Beauty's automated makeup brush and accessories. In its copyright protected blend**SMART** product video, Worth Beauty concludes the video with its trademarked phrase, "blend**SMART** is a revolution in makeup application."

**ANSWER:**  Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 34 of the Complaint, except deny that Plaintiff has any protectable trademark or other intellectual property rights, as alleged in Paragraph 34 of the Complaint.

## WORTH BEAUTY'S COPYRIGHTS

35.     Worth Beauty owns both registered and unregistered copyrights in and related to the packaging, instructions, videos, and website for its blend**SMART** automated makeup brush, blend**SMART** brush heads, and accessories. Worth Beauty has protected its valuable rights by filing for, and/or obtaining, U.S. Copyright Registrations in and relating to the Worth Beauty blend**SMART** products ("Worth Beauty Copyrights"):

**ANSWER:**  Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 35 of the Complaint.

55

36.     On August 29, 2017, Worth Beauty filed the application, deposited a copy of the work, and paid the appropriate fee to register its copyright for the blend**SMART** product instructions or product insert (Service Request No. 1-5769375071), and the application is currently pending.   A copy of the blend**SMART** product instructions or product insert is attached as Exhibit B.  Attached as Exhibit E is a screenshot of the United States Copyright Office's internet portal that shows the applications filed by Worth Beauty, the title of each work, the category of each work and the fee paid for each registration, including Service Request No. 1- 5769375071.

> **ANSWER:**  Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 36 of the Complaint.

37.     On January 13, 2017, Worth Beauty filed the application, deposited a copy of the work, and paid the appropriate fee to register its copyright for the product packaging for the blend**SMART²** starter set (Service Request No. 1-4336903021). Worth Beauty is the owner of Copyright Reg. No. VA2-066-580, covering the blend**SMART²** starter set packaging.  A copy of the registration certified and the blend**SMART²** starter set packaging are attached as Exhibit F.

> **ANSWER:**  Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 37 of the Complaint.

38.     On August 29, 2017, Worth Beauty filed the application, deposited a copy of the work, and paid the appropriate fee to register its copyright for the product packaging for the blend**SMART** starter set (Service Request No. 1-5769375195), and the application is currently pending as shown on Exhibit E.  A copy of the product packaging for the blend**SMART** starter set that was filed with the United States Copyright Office is attached as Exhibit G.

**ANSWER:** Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 38 of the Complaint.

39.     On August 31, 2017, Worth Beauty filed the application, deposited a copy of the work, and paid the appropriate fee to register its copyright for the product packaging for the blend**SMART** rotatable foundation brush head (Service Request No. 1-5769558494), and the application is currently pending as shown on Exhibit E. A copy of the product packaging for the blend**SMART** rotatable foundation brush head that was filed with the United States Copyright Office is attached as Exhibit H.

**ANSWER:** Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 39 of the Complaint.

40.     On September 1, 2017, Worth Beauty filed the application, deposited a copy of the work, and paid the appropriate fee to register its copyright for the product packaging for the blend**SMART**$^2$ rotatable foundation brush head (Service Request No. 1-5779166711), and the application is currently pending as shown on Exhibit E. A copy of the product packaging for the blend**SMART**$^2$ rotatable foundation brush head that was filed with the United States Copyright Office is attached as Exhibit I.

**ANSWER:** Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 40 of the Complaint.

41.     On August 29, 2017, Worth Beauty filed the application, deposited a copy of the work and the required code, and paid the appropriate fee to register its website, including its content (Service Request No. 1-5766150401), and the application is currently pending as shown on Exhibit E.

**ANSWER:** Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 41 of the Complaint.

### DEFENDANTS' "AIRTOUCH ROTATING MAKEUP BRUSH"

42.    In Spring 2017, Worth Beauty became aware that Defendants[21] were selling a virtually identical or knock-off rotating makeup brush called the "Airtouch Rotating Makeup Brush." Defendants have been causing confusion in the market; and they have been trading off the goodwill of the blend**SMART** products. Customers, potential customers, and others in the beauty industry are confused because the brushes and brush heads are virtually identical, and the Defendants' marketing and promotional materials are deceptively similar.

**ANSWER:**    Defendants deny each and every allegation in Paragraph 42 of the Complaint, except admit that defendant Allstar Marketing Group, LLC markets and sells the Airtouch.  Footnote 21 contains legal arguments to which no response is required, except Defendants admit that defendant Allstar Marketing Group, LLC is the entity that markets and sells the Airtouch and that "Allstar Products Group" is used as a d/b/a for "Allstar Marketing Group, LLC."

43.    Defendants describe themselves as a developer, producer, and marketer of consumer and/or "as seen on TV" products, including the "Airtouch Rotating Makeup Brush",

---

[21] Defendant Allstar Products Group, LLC, asserts that the Airtouch is manufactured and sold by Allstar Marketing Group, LLC, a separate and independent entity from Defendant. (Defendant's Motion to Dismiss Plaintiff's First Amended Original Complaint (Dkt. #15) at 24). However, the Airtouch website that markets, promotes, and sells the Airtouch brushes indicates to the contrary. The Airtouch website states that "[t]his Website is operated by *Allstar Products Group*. . . . If there is anything you do not understand please write any inquiry to *Allstar Products Group*, P.O. Box 214, Hawthorne NY 10532. . . . If you have any questions about your privacy or security at the Website, please send write to *Allstar Products Group*, PO Box 241, Hawthorne NY 10532 "[21] (emphasis added). The website also includes following information: "©2017 APG All Rights Reserved. Airtouch is a trademark of APG." The "APG" The Airtouch product instruction sheet that accompanies each Airtouch rotating brush states that the brush is "[d]istributed by *Allstar Products Group*, Hawthorne, NY 10532." (Complaint at Ex. B (Dkt. #14- 1)) (emphasis added). The product inserts also includes the same copyright and trademark references:  "©2017 APG All Rights Reserved.  Airtouch is a trademark of APG."  The Airtouch website and product instructions refer to "Allstar Products Group," not "Allstar Marketing Group." Moreover, the YouTube channel for "Allstar Products Group" includes the commercial for the Airtouch rotating makeup brush.

all over the world through direct response television, the internet, direct mail, and other retail channels." Defendants describe the "Airtouch Rotating Makeup Brush" as a "portable rotating makeup brush intended to help users apply foundations and other bases to the face with even proportions." Defendants' Airtouch brush system is sold with a rotating applicator, a removable and interchangeable foundation brush head, and a "free, bonus" removable and interchangeable powder brush head.

> **ANSWER**:  Defendants admit the allegations in paragraph 43 of the Complaint, except deny that defendant Allstar Products Group, LLC markets or sells the Airtouch, or any of its parts or accessories or otherwise describes it in any manner.

44.    Defendants sell their infringing Airtouch rotating makeup brush system through Airtouch Brush websites (www.airtouchbrush.com, www.airtouchbrushtips.com).  The Airtouch makeup brush, including two removable and interchangeable heads, is now available for purchase on HSN's websites,[22] through Amazon[23], on Bed Bath & Beyond's website,[24] on AmeriMark Direct, LLC's Time for Me website,[25] and Walmart's website.[26]  Airtouch recently introduced a set of three additional removable and interchangeable brush heads – the blush brush head, the finishing brush head, and the defining brush head. The brush head set is sold through the Airtouch website[27] and on HSN's website.[28]

> **ANSWER**:  Defendants admit the allegations in Paragraph 44 of the Complaint, except Defendants deny that the Airtouch infringes on any protectable intellectual or other rights

---

[22] https://www.hsn.com/products/airtouch-rotating-makeup-brush-with-2-brush-heads/8357139
[23] https://www.amazon.com/Allstar-Innovations-Airtouch-Rotating-Foundation/dp/B072M3LM1R
[24] https://www.bedbathandbeyond.com/store/product/microtouch-airtouch-rotating-makeup-brush/1062475556
[25] https://www.timeformecatalog.com/airtouch-rotating-makeup-brush/087143.html
[26] https://www.walmart.com/ip/AirTouch-Rotating-Makeup-Brush/656860376
[27] https://www.airtouchbrush.com/?mid=8863616
[28] https://www.hsn.com/products/airtouch-brush-replacement-heads-3-pack/2009587

of Plaintiff and deny that defendant Allstar Products Group, LLC markets or sells the Airtouch or any of its parts or accessories.

45.     Defendants are selling copies or colorable imitations of the blend**SMART** automated makeup brush and interchangeable brush heads in interstate commerce, causing confusion, mistake or deception. The blend**SMART** automated makeup brush and the Airtouch brush are virtually identical in appearance, except Defendants' products are manufactured with inferior materials, including a plastic handle and cheaper brush head materials. The blend**SMART** brush is mechanically and structurally superior; however, the blend**SMART** automated makeup brush system and the Airtouch brush system are virtually identical in appearance, including size and shape of the brush handle and basic cap; size, location, and appearance of the on-off switch; the use of removable and interchangeable brush heads; and the type, size, shape, and color of the removable and interchangeable brush heads.     The blend**SMART²** automated makeup brush system and the Airtouch brush system are strikingly and confusingly similar, in fact almost identical, in appearance.   A consumer who purchases Defendants' Airtouch rotating makeup brush is likely to be confused into believing it is purchasing a product from the same source as the blend**SMART** and blend**SMART²** automated makeup brush systems.   The two products are so similar the brush heads and handles are interchangeable, which leaves beauty consumers with the impression that they are of the same origin and of the same quality.

**ANSWER**:  Defendants deny each and every allegation in Paragraph 45 of the Complaint.

46.     Defendants' Airtouch automated makeup brush system is identical to Worth Beauty's blend**SMART** automated brush system, including size and shape of the brush handle and

basic cap; size, location, and appearance of the on-off switch; the use of removable and interchangeable brush. As the following side-by-side comparison shows, Defendant copied Worth Beauty's blend**SMART** automated brush system—Worth Beauty blend**SMART** (bottom-black) Airtouch rotating makeup brush (top-purple):



**ANSWER:**  Defendants deny each and every allegation in Paragraph 46 of the Complaint.

47.    In addition, as the following side-by-side comparison shows, Defendant copied Worth Beauty's automated makeup brush system and is selling a rotating makeup brush with a handle and removable and interchangeable brush heads (top with purple handle) that are identical to Worth Beauty's blend**SMART** (middle with black handle) and deceptively and confusingly similar blend**SMART²** automated brush systems (bottom with black handle). When Defendants' Airtouch brush (top with purple handle) is placed alongside Worth Beauty's blend**SMART** and blend**SMART²** automated makeup brush systems, customers are likely to confuse the products and their sources of origin.



**ANSWER:**  Defendants deny each and every allegation in Paragraph 47 of the Complaint.

48.     Defendant sells its Airtouch makeup brush and brush heads through the Airtouch website (www.airtouchbrush.com), and Defendant recently presented the Airtouch on HSN, a national shopping network providing televised home shopping. The handles for the Airtouch brush sold through the Airtouch website (top) and the Airtouch brush sold through HSN (second from top) are identical to the handle for the blend**SMART** automated brush system (second from bottom) and strikingly and confusingly similar to the handle for the blend**SMART²** automated brush system (bottom):

**Defendants' Airtouch brush (Airtouch website and packaging)**



**Defendants' Airtouch brush (advertised and sold through HSN)**



**Plaintiff Worth Beauty's blendSMART (top) and blendSMART[2] (bottom)**



**ANSWER:**   Defendants deny each and every allegation in Paragraph 48 of the Complaint, except defendant Allstar Marketing Group, LLC admits that it has sold the Airtouch through the www.airtouchbrush.com website and through the HSN network.

49.    On a recent HSN presentation in July 2017, Airtouch presented and demonstrated an Airtouch brush that is identical to the blend**SMART** brush:



**ANSWER:** Defendants deny each and every allegation in Paragraph 49 of the Complaint.

50. The same knock-off brush, which is identical to Worth Beauty's blend**SMART** brush, is now depicted on the front and back of Defendants' Airtouch packaging (a screenshot of the Airtouch packaging is also attached as Exhibit D):



**ANSWER:**   Defendants deny each and every allegation in Paragraph 50 of the Complaint.

51.     Defendants' removable and interchangeable Airtouch brush heads are identical, or at least, strikingly and confusingly similar to Worth Beauty's blend**SMART** brush   heads, including shape and color:

**blendSMART foundation brush head**                    **Airtouch foundation brush head**





FOUNDATION BRUSH HEAD —

Use with foundation for even application.

**blendSMART blush brush head**                    **Airtouch blush brush head**





**blendSMART full coverage foundation finishing brush head**

BLUSH BRUSH HEAD --

Use with blush for even application.

**Airtouch finishing brush head**





Finishing Brush

**blendSMART defining brush head**                          **Airtouch defining brush**





Defining Brush

**blendSMART powder brush head**                          **Airtouch powder brush head**





**ANSWER:**   Defendants deny each and every allegation in Paragraph 51 of the

Complaint.

52.     Recently, Airtouch altered the photographs of the Airtouch interchangeable and removable brush heads that are shown on its website. Allstar has doctored the photographs to shorten the base of the liquid brush head and the powder brush head in an effort to conceal that it has copied blend**SMART** brush heads. However, Allstar has only altered its marketing photographs on the website.   The actual Airtouch brush heads remain identical to the blend**SMART** brush heads.

**ANSWER**:   Defendants deny each and every allegation in Paragraph 52 of the Complaint.

53.     The dimensions of the motorized handle and the base cup of Defendants' Airtouch brush, along with its removable and interchangeable foundation brush head, are identical, or at least strikingly similar, to Worth Beauty's blend**SMART** automated makeup brush handle, base cap, and removable and interchangeable brush heads:

| blend**SMART'S** Dimensions | Defendants' Airtouch Dimensions |
|---|---|
| blend**SMART** handle measurements (not including brush head):<br>Length: 146.05 mm<br>Top: 29.70 mm<br>Middle 22.59 mm<br>Bottom upper: 20.04 mm<br>Bottom lower: 25.07 mm | Airtouch handle measurements (HSN) (not including brush head):<br>Length: 152.78 mm<br>Top:  29.68  mm<br>Middle 25.5 mm<br>Middle (without rubber): 22.85<br>Bottom upper: 20.04 mm<br>Bottom lower: 25.07 mm |
| blend**SMART** base cap measurements:<br>Length: 31.75 | Airtouch base cap measurements (HSN):<br>Length: 38.11 mm |
| blend**SMART** foundation brush head measurements:<br>Length: 62.67 mm<br>Upper Cap: 30.09 mm<br>Middle Cap: 26.68 mm<br>Lower Cap: 25.25 mm | Airtouch foundation brush head measurements (HSN):<br>Length: 64.32 mm<br>Upper Cap: 30.24 mm<br>Middle Cap: 26.73 mm<br>Lower Cap: 26.26 mm |

**ANSWER:**  Defendants deny knowledge or information sufficient to form a belief

as to the truth of the allegations in Paragraph 53 of the Complaint.

54.    The interior packaging of Defendants' Airtouch product is also strikingly similar

to the packaging for Worth Beauty's blend**SMART** automated makeup brush system.   The

blend**SMART** interior packaging consists of a white plastic tray designed to hold and feature the

blend**SMART** handle, the blend**SMART** foundation brush head, and a battery, and a thin clear

plastic molded lid designed to fit over the product tray. A side by side comparison of the interior

packaging shows the similarities with Defendants' Airtouch brush on the left and in the center,

and the blend**SMART** automated makeup brush system on the right:[29]



**ANSWER:** Defendants deny each and every allegation in Paragraph 54 of the

Complaint, including footnote 29, except Defendants admit the allegation in footnote 29

that the Airtouch is sold with a rotating applicator, a foundation brush head and a powder

brush head, and that the product includes the lithium battery and user guide, and deny

---

[29] The Airtouch brush is sold with a "rotating applicator," a "foundation brush head," and a free or bonus
"powder brush head", and the product includes the lithium battery and user guide.  The blend**SMART** automated
makeup brush system includes the automated handle, rotating brush head, CR123A lithium battery, and user
guide.  The blendSMART interchangeable powder brush head is available for purchase separately.

knowledge or information sufficient to form a belief as to the truth of the remaining allegations in footnote 29 as well as the allegations as to what is contained in Plaintiff's interior packaging.

55.     The blend**SMART** and Airtouch products are so similar that the removable blend**SMART** brush heads are interchangeable with the removable Airtouch brush heads, meaning that a consumer can place a blend**SMART** brush head on the Airtouch base and the brush head will rotate. And the reverse is true as well - a consumer can place an Airtouch brush head on the blend**SMART** automated makeup base, and the brush head will rotate. Likewise, the bottom caps are interchangeable – the Airtouch bottom cap can be screwed onto the base of the blend**SMART** handle, and the blend**SMART** product will work. And the reverse is true as well. In  the photograph below, the Airtouch foundation brush head and purple base cap have been placed on the blend**SMART** handle base, and the blend**SMART** foundation head and black base cap have been placed on the Airtouch purple motorized handle base:



**ANSWER:**  Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 55 of the Complaint.

56.     Further trying to take advantage of the goodwill associated with the blend**SMART** product line, Defendant has marketed its Airtouch products with product instructions, product descriptions, and advertising and promotional materials that are blatantly copied from Worth

Beauty's product instructions, product inserts, packaging, and promotional materials. Defendants' adoption and use of Worth Beauty's copyrightable product instructions, product packaging, website content, advertising, and promotional materials was done with the intent and purpose of misleading and deceiving the public, and unfairly capitalizing on Worth Beauty's initiative and goodwill.

**ANSWER:** Defendants deny each and every allegation in Paragraph 56 of the Complaint.

57. Defendants' product descriptions for the Airtouch brush are confusingly similar, if not virtually identical, to Worth Beauty's product descriptions on the blend**SMART** packaging and website:

| blend**SMART** | **Airtouch** |
|---|---|
| Our blend**SMART** rotating brush creates a beautifully blended finish for your most flawless application ever. | A Beautifully Blended, Flawless Application |
| Easy to Use no skills needed | Easy to Use – no skills needed |
| Blends Evenly no lines or streaks | Blends Evenly – no lines or streaks |
| Better Coverage less makeup | Better coverage – less makeup |
| Flawless Finish • less makeup | Flawless Finish – in less time |
| blend**SMART's** easy-to-use makeup tool provides air-brush like results.<br><br>Perfectly calibrated rotating motion for airbrush-lie results. | Airbrush like results without the hassle |
| Slowly glide across your face side-to-side and up and down | Glide the brush side to side and up and down with light pressure |

**ANSWER:** Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 57 of the Complaint.

58.     Defendants' product descriptions for its Airtouch interchangeable brush heads are very similar to the product descriptions on the blend**SMART** and blend**SMART**<sup>2</sup> packaging and the blend**SMART** website:

| blend**SMART** | **Airtouch** |
|---|---|
| blend**SMART** Definer Brush Head: This brush provides precision placement of product to conceal, accent and detail around areas such as your eyes, nose, and hair line.<br><br>blend**SMART**<sup>2</sup> Definer Brush Head: This detail head is great for precise placement of product to conceal, define, and detail the eyes, nose, and hairline. Works well with concealers, contouring, and highlighting! | Airtouch Definer Brush Head: Precision application around the nose, eyes, and hair line. *Detail/Contour/Conceal* |
| blend**SMART** Full Coverage and Finishing Brush Head: Use this brush head with all foundation formulations to create buildable coverage. With a rounded head and dense fibers, this brush head is also perfect for finishing with your favorite powder makeup.<br><br>blend**SMART**<sup>2</sup> Full Coverage and Finishing Brush Head: The dome shaped full coverage and finishing head magnetically attaches to the blendSMART2 rotating makeup applicator. Spinning at 190 RPM, this is our most dense head for pro blending. The synthetic fibers gently rotate to effortlessly blend and works especially well with heavier formulations, touch ups, buffing and finishing. | Airtouch Finishing Brush Head: Rounded shape for all over coverage and a perfect finish. *Buffing/Blending* |
| blend**SMART** Blush Brush Head: Rounded tip designed to effortlessly sweep along the cheek bone for precise application.<br><br>blend**SMART**<sup>2</sup> Blush Brush Head: Spinning at 190 RPM, its gentle rotating motion effortlessly blends and buffs your blush for natural looking results every time. You can even buff out makeup mistakes. Great for powder and liquid blush, bronzing and highlighting. | Airtouch Blush Brush Head: Specially designed shape glides easily along cheek bone. *Highlighting/Bronzing/Buffing* |

**ANSWER:** Defendants deny knowledge or information sufficient to form a belief

as to the truth of the allegations in Paragraph 58 of the Complaint.

59.     The Airtouch rotating brush "Instruction Manual", which is provided to customers

with the purchase of each Airtouch brush, is confusingly similar, to the blend**SMART** product

instructions. A copy of the Airtouch "Instruction Manual" is attached as Exhibit "A," and copy

of the blend**SMART** and blend**SMART**$^2$ product instructions is attached as Exhibit "B." For

example, the blend**SMART** automated makeup brush system instructions include graphics

illustrating how to use the makeup brush to apply liquid makeup and how to blend makeup with

the blend**SMART** brush. The Airtouch product instructions include virtually identical product

instructions and graphics. For example, the Airtouch instructions include a graphic illustrating

how to use the Airtouch brush to apply liquid makeup. The Airtouch instruction manual also

includes a graphic showing the customer how to blend makeup using the Airtouch rotating

makeup brush. A side by side comparison shows that Defendant blatantly copied the

blend**SMART** automated makeup brush system instructions:

**blendSMART (Exhibit B)**          **Airtouch (Exhibit A)**





**blendSMART (Exhibit B)**                    **Airtouch (Exhibit A)**

      

**ANSWER:**   Defendants deny each and every allegation in Paragraph 59 of the Complaint, and refer the Court to the referenced documents for their specific contents.

60.   Defendant did not just blatantly copy Worth Beauty's product graphics – it also copied the customer instructions on how to apply and blend your liquid makeup and how to apply powder foundation:

| **blendSMART (Exhibit B)** | **Airtouch (Exhibit A)** |
|---|---|
| APPLY YOUR MAKEUP, pull your hair away from your face. Then choose your favorite makeup. Never poor liquid makeup on your brush head. DOT YOUR FACE with a small amount. Less is more!<br><br>For liquid makeup, apply dots to each part of your face. You can always reapply as needed! | APPLY. Important, keep hair away from your face using a band or hair tie. Dot your face with liquid or cream makeup. Only a small amount is required. DO NOT pour liquid makeup onto the brush head |
| BLEND YOUR MAKEUP. FOR BEST RESULTS do not apply in a circular motion. . . let the brush do the work for you! TURN ON the rotating brush applicator. START blending your makeup by holding the ergonomic applicator and gliding it slowly across your face. Side-to-side and up-and-down while applying the necessary pressure to achieve your desired makeup coverage. AVOID YOUR HAIRLINE AND EYES. | BLEND. Turn the brush on. Glide the brush slowly around your face in the direction shown for each area. Use light pressure with side to side or up and down motion. DO NOT use a circular motion. Avoid your lips, hairline, and eyes. Continue until blended evenly. |

| For powder makeup, in the "off" position, dab the brush head directly into your makeup. Then tap off any excess product. | Ensure the unit is powered off. Lightly pat the brush head directly into the powder makeup. Blend makeup using the light pressure with side to side or up and down motion. DO NOT use a circular motion. |
|---|---|

**ANSWER:** Defendants deny each and every allegation in Paragraph 60 of the Complaint, and refer the Court to the referenced documents for their specific contents.

61.     Defendants' copyrighted Airbrush instruction manual (Exhibit "A") also includes a nearly identical graphic featuring and showing how to use its identical interchangeable brush heads with its identical motorized brush handle:

blend**SMART** (Exhibit B)



**INTERCHANGEABLE BRUSH HEADS**
We offer separate brush heads for powder, blush and more.
Change the brush heads. Not the handle.

Airtouch (Exhibit A)



**ANSWER:** Defendants deny each and every allegation in Paragraph 61 of the Complaint, and refer the Court to the referenced documents for their specific contents.

62.     The blend**SMART** brush spins at approximately 190 RPM, and that fact is described throughout Worth Beauty's advertising, packaging and other promotional materials. For example, the front of the blend**SMART²** brush system product packaging prominently features the phrase, "spins at 190 RPM for airbrush-like results." Worth Beauty's product videos

55

and website also include references to the fact that the "interchangeable brush heads spin at 190 RPMs."

**ANSWER:** Defendants deny each and every allegation in Paragraph 62 of the Complaint, and refer the Court to the referenced documents for their specific contents.

63.    On Defendants' promotional materials for the Airtouch brush, including its instruction manual and product website, and on the Airtouch product packaging, Defendants state that the Airtouch brush also spins at "190 RPM", just like the product descriptions of the blend**SMART** automated makeup brush: "Brush head rotates at 190 RPM to apply makeup faster, easier and Streak-free."[30] On the HSN website, Defendants advertise that the Airtouch "base rotates the brush at a full 360 degrees at 190 rotations per minute."[31] During the HSN product presentations, the Airtouch representative and HSN hosts repeatedly state that the Airtouch brush spins or rotates at 190 RPM.  However, the Airtouch brush actually spins at 245 RPM, not at 190 RPM as Defendantz advertise. This is just another example of Defendants' blatant copying of Worth Beauty's products, advertising, and promotional materials in an effort to sell, advertise, and promote Defendants' counterfeit makeup brush.

**ANSWER:** Defendants deny each and every allegation in Paragraph 63 of the Complaint, and refer the Court to the referenced documents for their specific contents.

64.    Defendants' repeated instances of copying clearly demonstrate a continuing intent to deceive the consumer. Such simulation of Worth Beauty's blend**SMART** product instructions, descriptions, and graphics is conclusive evidence of Defendants' intent to deceive the consumer and cause confusion by using numerous aspects of the blend**SMART** automated makeup brush

---

[30] https://www.airtouchbrush.com/ATRB/2.0000/Index.dtm?sotsid=4073
[31] https://www.hsn.com/products/airtouch-rotating-makeup-brush-with-2-brush-heads/8357139

system and the marketing materials for the blend**SMART** product line to simulate the genuine product and take advantage of the reputation of the company that was the first to market.

> **ANSWER:** Defendants deny each and every allegation in Paragraph 64 of the Complaint.

65.     Defendants represents that Taylor Baldwin is the inventor of Defendants' counterfeit automated rotating makeup applicator. On the Airtouch website and on the Airtouch packaging, Defendant features Taylor Baldwin as "Inventor and Producer." (Exhibit D). Defendant represents to the public and consumers that Ms. Baldwin has "long been a trusted name in health and beauty dedicated to seeking out (or inventing) the best products and tips!"[32] Ms. Baldwin did not invent the Airtouch rotating makeup brush.  The Airtouch brush is a counterfeit product and blatant imitation or knock-off of the blend**SMART** automated makeup brush that was invented and developed by Carol Martin and Steve Machiorlette.

> **ANSWER:** Defendants deny each and every allegation in Paragraph 65 of the Complaint, and refer the Court to the referenced documents for their specific contents.

66.     Worth Beauty has adopted and continuously used the trademark "A revolution in makeup application™" on the blend**SMART** packaging, advertising, website, and promotional materials. Defendant is now routinely using the same phrase to describe its automatic makeup brush in its marketing efforts and across social media. For example, Taylor Baldwin opens Defendants' Airtouch product video by stating that the Airtouch brush is a "revolutionary rotating makeup brush that guarantees professional makeup artist results without the expense and time commitment."

> **ANSWER:** Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 66 of the Complaint,

---

[32] https://www.airtouchbrush.com/ATRB/2.0000/Index.dtm?sotsid=4073

Defendants deny the remaining allegations in Paragraph 66 of the Complaint, and refer the Court to the referenced video for its specific contents.

67.     The blend**SMART** packaging has featured graphics comprised of a small circular arrow with the phrase "360 brush spin" or "360°" inside. These graphics are featured on the cover of the front of the blend**SMART**[2] box, the box tops of the interchangeable brush heads, and blend**SMART** website. The front and box of the blend**SMART**[2] box feature a photograph of the automated makeup brush with circular lines rotating around the top of the brush head.   The graphics are intended to emphasize to consumers that the blend**SMART** makeup brush rotates, thus the use of the circular arrow.   On its Airtouch brush website, Defendants have included a graphic comprised of circular rotating lines in the "Airtouch rotating makeup brush" logo, imitating blend**SMART**.   The graphics are shown below:

**<u>blendSMART</u>**




**<u>Airtouch</u>**



55

Defendants have now included a photograph of the Airtouch brush on the product packaging, and the Airtouch brush is shown with circular lines around the top of the brush.

> **ANSWER:**  Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 67 of the Complaint, except deny that the Airtouch packaging imitates that of Plaintiff's product.

68.     The use of the circular rotating lines was copied from the blend**SMART** packaging and advertising and is intended to confuse the Airtouch brush with the blend**SMART** brush system. Defendant is deliberately trying to mislead and confuse potential customers and the market regarding the competing brushes, and thereby trade off of and gain an economic advantage from blend**SMART'S** success and goodwill.

> **ANSWER:** Defendants deny each and every allegation in Paragraph 68 of the Complaint.

69.     In Defendants' online video presentation on the Airtouch website and in its infomercials for the Airtouch brush, Defendant states that its Airtouch rotating brush, along with a bonus powder brush head, is "only $39.95" and that the products are "an $80.00 value." During its HSN product presentations, the Airtouch representative and HSN hosts repeatedly represent that "normally these rotating brushes are expensive, about one hundred dollars," but the Airtouch brush is only $39.95. Defendant is referencing Worth Beauty's blend**SMART** automated makeup brush systems that retails for $69.00 for a starter set, including the motorized brush and universal foundation head and $26.00 for an additional interchangeable brush head. Defendants' statements and representations regarding the value and price of the Airtouch brush are intended to deceive customers, potential customers, vendors, potential vendors, and/or end users into thinking (1) that Defendant and/or its products are somehow approved, sponsored, licensed by, or affiliated with, Worth Beauty; and/or (2) that the Airtouch brush and the blend**SMART**

automated makeup brush systems are the same when the two brushes are not of the same origin and are not comparable in terms of quality and performance.

    **ANSWER:**   Defendants deny each and every allegation in Paragraph 69 of the Complaint, except Defendants admit that the online video concerning the Airtouch references its price of $39.95 and that the product is approximately an $80.00 value.

70.    Worth Beauty has expended significant time, money, and resources in ensuring that its blend**SMART** product meets the highest quality standards. The price point and product placement reflects that; and therefore, Worth Beauty has carefully chosen upscale retail stores and web retailers that reflect the intended brand direction of the blend**SMART** automated makeup brush systems.

    **ANSWER:**   Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 70 of the Complaint.

71.    Defendants' systemic and repeated unauthorized use of Worth Beauty's intellectual property for a directly copied makeup brush, provided to the same class of customers, through similar marketing channels, has caused confusion and is likely to continue to cause confusion in the future. The Defendants' actions tend to cause mistakes, and/or to deceive customers, potential customers, vendors, potential vendors, and/or end users into thinking that Defendant and/or its products are somehow approved, sponsored, licensed by, or affiliated with, Worth Beauty.

    **ANSWER:**   Defendants deny each and every allegation in Paragraph 71 of the Complaint.

72.    Worth Beauty's blend**SMART** and blend**SMART**[2] automated makeup systems and Defendants' Airtouch brush system are marketed and sold to the same prospective customer

base and through the same channels of trade, including televised shopping networks and the internet. Customers, potential customers, vendors, potential vendors, and/or end users are likely to mistake and/or be confused about the source, sponsorship, origin and affiliation of Defendants' Airtouch makeup brush based on Defendants' use of Worth Beauty's blend**SMART** intellectual property, including trade dress, trademarks, and copyright protected packing and advertising and promotional materials.

**ANSWER**:   Defendants deny each and every allegation in Paragraph 72 of the Complaint, except deny knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 72 of the Complaint.

73.   Customers who are dissatisfied with Defendants' product are likely to attribute their dissatisfaction to Worth Beauty's product, thereby eroding the goodwill Worth Beauty enjoys with the purchasing public. Comments on the Airtouch product page on the HSN website show that customers are unhappy with the quality of the Airtouch rotating makeup brush system. Some examples are:

- "This brush is cheaply made, and it doesn't blend out nicely at all. I will be returning it unfortunately."

- "Needs improvements. Poor quality brushes, they actually hurt around the eye area. Returning."

- "Didn't Work. . . . The brush barely turned and each time I put it on my face, it stopped. Either it is not powerful enough, or the battery isn't strong enough. After using 4 times, the battery died completely. I returned the product."

- "Not worth it. This was a waste of money, it leaves streaks on my face and I have to go over my foundation with a regular blending brush. It reminds me of painting wood and seeing the brush strokes on it."

- "Fail. Worked for 5 minutes. Good concept, bad execution."

**ANSWER:**   Defendants deny each and every allegation in Paragraph 73 of the Complaint, except Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations concerning the comments attributed to the HSN website concerning the Airtouch.

74.     Customers and potential customers have noted and reported similarities between Worth Beauty's blend**SMART** and blend**SMART**$^2$ automated makeup systems and Defendants' Airtouch brush system, packaging, product inserts and instructions, and promotional materials, and have been confused as a result of Defendants' use of Worth Beauty's intellectual property, including trade dress, trademark, and copyright protected packing and advertising and promotional materials.

**ANSWER:**  Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 74 of the Complaint.

75.     Defendants' unauthorized activities undermine Worth Beauty's goodwill that would be otherwise associated with the blend**SMART** and blend**SMART**$^2$ product lines. This has negatively impacted Worth Beauty's ability to develop and promote the blend**SMART** brand and to have that brand associated exclusively with its own products. Worth Beauty has been damaged by Defendants' violation of Worth Beauty's blend**SMART** and blend**SMART**$^2$ intellectual property rights.

**ANSWER:**   Defendants deny each and every allegation in Paragraph 75 of the Complaint.

76.     Defendants' Airtouch makeup brush system is intentionally and confusingly similar to Worth Beauty's blend**SMART** and blend**SMART**$^2$ automated makeup brush systems. Defendants' packaging, product instructions and inserts, and promotional and advertising

materials are intentionally and confusingly similar, and in many case virtually identical, to Worth Beauty's packaging, product instructions and inserts, and promotional and advertising materials for the blend**SMART** and blend**SMART**$^2$ automated makeup brush systems.  Defendants did not just use Worth Beauty's products and advertising as inspiration. Rather, Defendants copied Worth Beauty's automated makeup brush systems and its product packaging and instructions trademarks, and advertising and promotional materials. Defendants' infringement of Worth Beauty's intellectual property rights is willful and deliberate.

**ANSWER:**   Defendants deny each and every allegation in Paragraph 76 of the Complaint.

## V.    CAUSES OF ACTION

### COUNT I: FEDERAL TRADE DRESS INFRINGEMENT

77.    Worth Beauty refers to and incorporates herein the allegations of Paragraphs 1 through 76  above.

**ANSWER:**  Defendants hereby incorporate all previously stated admissions and denials as addressed to each specific allegation of the Second Amended Complaint, as set forth above.

78.    Defendants' advertisements, promotions, offers to sell, sales, and/or distribution of infringing products as set forth above constitute infringement of Worth Beauty's trade dress, in direct competition with Worth Beauty and violate § 43 of the Lanham Act, 15 U.S.C. §1125(a) by infringing Worth Beauty's trade dress. Defendants' use of Worth Beauty's trade dress and/or colorable imitations thereof is likely to cause confusion, mistake, or deception as to the affiliation, connection, and/or association of Defendants with Worth Beauty and as to the origin, sponsorship, and/or approval of Defendants' infringing products, at least by creating the  false

55

and misleading impression that its infringing products are manufactured by, authorized by, or otherwise associated with Worth Beauty.

> **ANSWER:**   Defendants deny each and every allegation in Paragraph 78 of the Complaint.

79.     Worth Beauty's trade dress is entitled to protection under the Lanham Act.  Worth Beauty's trade dress includes unique, distinctive, and non-functional designs.  Worth Beauty has extensively and continuously promoted and used its trade dress in the United States and the State of Texas. Through that extensive and continuous use, Worth Beauty's trade dress has become a well-known and famous indicator of the origin and quality of Worth Beauty's automated makeup brush systems. Worth Beauty's trade dress has also acquired substantial secondary meaning in the marketplace. Moreover, Worth Beauty's trade dress acquired this secondary meaning before Allstar commenced its unlawful use of Worth Beauty's trade dress in connection with the infringing products.

> **ANSWER:**   Defendants deny each and every allegation in Paragraph 79 of the Complaint.

80.     Defendants' use of Worth Beauty's trade dress has caused and, unless enjoined, will continue to cause substantial and irreparable injury to Worth Beauty for which Worth Beauty has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Worth Beauty's trade dress with the blend**SMART** automated makeup brush systems.

> **ANSWER:**   Defendants deny each and every allegation in Paragraph 80 of the Complaint.

81.     Defendants' use of Worth Beauty's trade dress and colorable imitations thereof has been intentional, willful, and malicious. Defendants' bad faith is evidence at least by the

similarity of the infringing products to Worth Beauty's trade dress, as demonstrated above, and by Defendants' continuing disregard for Worth Beauty's rights.

> **ANSWER:**   Defendants deny each and every allegation in Paragraph 81 of the Complaint.

82.    Further, as a result of such infringement, Defendants have made unjust profits and ill-gotten gains from the marketing, promotion, distribution, and sale of its products by trading on the intellectual property associated with Worth Beauty's products, including Worth Beauty's trade dress.

> **ANSWER:**   Defendants deny each and every allegation in Paragraph 82 of the Complaint.

83.    Worth Beauty is entitled to injunctive relief, and Worth Beauty is entitled to recover at least Defendants' profits, Worth Beauty's actual damages, enhanced damages, cots, and reasonable attorneys' fees under at least 15 U.S.C. §§ 1125(a), 1116, and 1117.

> **ANSWER:**   Defendants deny each and every allegation in Paragraph 83 of the Complaint.

### COUNT II: FEDERAL UNFAIR COMPETITION, FALSE DESIGNATION OF ORIGIN, AND PASSING OFF

84.    Worth Beauty refers to and incorporates herein the allegations in Paragraphs 1 through 83 above.

> **ANSWER:**  Defendants hereby incorporate all previously stated admissions and denials as addressed to each specific allegation of the Second Amended Complaint, as set forth above.

85.    Defendants' advertisements, promotions, offers to sell, sales, and/or distribution of infringing products as set forth above constitute infringement of Worth Beauty's trade dress,

in direct competition with Worth Beauty, violate § 43 of the Lanham Act, 15 U.S.C. §1125(a), and constitute unfair competition and false designation of origin. Defendants have obtained an unfair advantage as compared to Worth Beauty through Defendants' use of Worth Beauty's trade dress, and such uses have caused and are likely to cause confusion, mistake, or deception in that purchasers and others are likely to assume that Defendants' automated makeup brushes marketed under Worth Beauty's trade dress are Worth Beauty's automated makeup brushes, or are sponsored by, or connected or affiliated with Worth Beauty or its automated makeup brush systems.

**ANSWER**: Defendants deny each and every allegation in Paragraph 85 of the Complaint.

86. Defendants have knowingly and willfully engaged in conduct that constitutes false advertising, false designation of origin, false or misleading representation of fact tending wrongfully and falsely to describe or represent a connection between Worth Beauty's automated makeup brush systems and Defendants' automated makeup brush, and an infringement of Worth Beauty's trade dress rights.

**ANSWER**: Defendants deny each and every allegation in Paragraph 86 of the Complaint.

87. Defendants' use of Worth Beauty's trade dress has caused and is likely to cause confusion, mistake, or deception in that purchasers and others are likely to assume that Defendants' automated makeup brushes marketed under Worth Beauty's trade dress are Worth Beauty's automated makeup brushes, or are sponsored by, or connected or affiliated with Worth Beauty or its blendSMART makeup applicators.

55

**ANSWER:**   Defendants deny each and every allegation in Paragraph 87 of the Complaint.

88.     Worth Beauty's trade dress is entitled to protection under the Lanham Act. Worth Beauty's trade dress includes unique, distinctive, and non-functional designs. Worth Beauty has extensively and continuously promoted and used its trade dress in the United States and the State of Texas. Through that extensive and continuous use, Worth Beauty's trade dress has become a well-known and famous indicator of the origin and quality of Worth Beauty's automated makeup brush systems. Worth Beauty's trade dress has also acquired substantial secondary meaning in the marketplace. Moreover, Worth Beauty's trade dress acquired this secondary meaning before Allstar commenced its unlawful use of Worth Beauty's trade dress in connection with the infringing products.

**ANSWER:**   Defendants deny each and every allegation in Paragraph 88 of the Complaint.

89.     Defendants' use of Worth Beauty's trade dress has caused and, unless enjoined, will continue to cause substantial and irreparable injury to Worth Beauty for which Worth Beauty has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Worth Beauty's trade dress with the blend**SMART** automated makeup brush systems.

**ANSWER:**   Defendants deny each and every allegation in Paragraph 89 of the Complaint.

90.     Defendants' use of Worth Beauty's trade dress and colorable imitations thereof has been intentional, willful, and malicious. Defendants' bad faith is evidence at least by the similarity of the infirming products to Worth Beauty's trade dress, as demonstrated above, and

by Defendants' continuing disregard for Worth Beauty's rights.

**ANSWER:**   Defendants deny each and every allegation in Paragraph 90 of the Complaint.

91.     Further, as a result of such infringement, Defendants have made unjust profits and ill-gotten gains from the marketing, promotion, distribution, and sale of its products by trading on the intellectual property associated with Worth Beauty's products, including Worth Beauty's trade dress.

**ANSWER:**   Defendants deny each and every allegation in Paragraph 91 of the Complaint.

92.     Worth Beauty is entitled to injunctive relief, and Worth Beauty is entitled to recover at least Defendants' profits, Worth Beauty's actual damages, enhanced damages, cots, and reasonable attorneys' fees under at least 15 U.S.C. §§ 1125(a), 1116, and 1117.

**ANSWER:**   Defendants deny each and every allegation in Paragraph 92 of the Complaint.

### COUNT III: COMMON LAW TRADE DRESS INFRINGEMENT

93.     Worth Beauty refers to and incorporates herein the allegations in Paragraph 1 through 92 above.

**ANSWER:**  Defendants hereby incorporate all previously stated admissions and denials as addressed to each specific allegation of the Second Amended Complaint, as set forth above.

94.     Defendants' advertisements, promotions, offers to sell, sales, and/or distribution of the infringing products, in direct competition with Worth Beauty constitute common law trade dress infringement, at least because Defendants' use of Worth Beauty's trade dress and/or

colorable imitations thereof is likely to cause consumer confusion as to the origin and/or sponsorship/affiliation of its infringing products, at least by creating the false and misleading impression that its infringing products are manufactured by, authorized by, or otherwise associated with Worth Beauty.

**ANSWER:**   Defendants deny each and every allegation in Paragraph 94 of the Complaint.

95.     Worth Beauty's trade dress is entitled to protection under common law. Worth Beauty's trade dress includes, unique, distinctive, and non-functional designs. Worth Beauty has extensively and continuously promoted and used its trade dress in the United States and the State of Texas. Through that extensive and continuous use, Worth Beauty's trade dress has become a well-known indicator of the origin and quality of Worth Beauty's automated makeup brush systems. Worth Beauty's trade dress has also acquired substantial secondary meaning in the marketplace. Moreover, Worth Beauty's trade dress acquired this secondary meaning before Allstar commenced its unlawful use of Worth Beauty's trade dress in connection with the infringing products.

**ANSWER:**   Defendants deny each and every allegation in Paragraph 95 of the Complaint.

96.     Defendants' use of Worth Beauty's trade dress has caused and, unless enjoined, will continue to cause substantial and irreparable injury to Worth Beauty for which Worth Beauty has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Worth Beauty's trade dress with the blend**SMART** automated makeup brush systems.

**ANSWER:** Defendants deny each and every allegation in Paragraph 96 of the Complaint.

97.    Defendants' use of Worth Beauty's trade dress and colorable imitations thereof has been intentional, willful, and malicious. Defendants' bad faith is evidence at least by the similarity of the infirming products to Worth Beauty's trade dress, as demonstrated above, and by Defendants' continuing disregard for Worth Beauty's rights.

**ANSWER:** Defendants deny each and every allegation in Paragraph 97 of the Complaint.

98.    Further, as a result of such infringement, Defendants have made unjust profits and ill-gotten gains from the marketing, promotion, distribution, and sale of its products by trading on the intellectual property associated with Worth Beauty's products, including Worth Beauty's trade dress.

**ANSWER:** Defendants deny each and every allegation in Paragraph 98 of the Complaint.

99.    Worth Beauty is entitled to injunctive relief, and Worth Beauty is entitled to recover at least Defendants' profits, Worth Beauty's damages, punitive damages, costs, and reasonable attorneys' fees.

**ANSWER:** Defendants deny each and every allegation in Paragraph 99 of the Complaint.

## COUNT IV: FEDERAL TRADEMARK INFRINGEMENT

100.    Worth Beauty refers to and incorporates herein the allegations in Paragraphs 1 through 99 above.

**ANSWER:**  Defendants hereby incorporate all previously stated admissions and denials as addressed to each specific allegation of the Second Amended Complaint, as set forth above.

101.   Defendants' actions and conduct set forth above violate Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Defendants' advertisements, promotions, offers to sell, sales, and/or distribution of the infringing products, in direct competition with Worth Beauty, constitute trademark infringement in violation of federal law.   Defendants have marketed, promoted, distributed, offered for sale, and sold its Airtouch brush using Worth Beauty's trademark, "A Revolution in Makeup Application." Although unregistered, the mark is legally protectable. As a result of Defendants' unauthorized use of trademarks that are confusingly similar to Worth Beauty's registered mark, the public is likely to believe that Defendants' products have been manufactured, approved by, or are affiliated with Worth Beauty and the blend**SMART** product lines.

**ANSWER:**   Defendants deny each and every allegation in Paragraph 101 of the Complaint.

102.   Defendants' unauthorized use of Worth Beauty's trademark and/or a colorable imitation thereof is likely to cause consumer confusion as to the origin and/or sponsorship/affiliation of its infringing products, at least by creating the false and misleading impression that its infringing products are manufactured by, authorized by, or otherwise associated with Worth Beauty. Defendants' unauthorized activities undermine Worth Beauty's goodwill and negatively impact Worth Beauty's ability to develop and promote the blend**SMART** brand and to have that brand associated exclusively with its own products.

**ANSWER:**   Defendants deny each and every allegation in Paragraph 102 of the Complaint.

103.    As a result of such infringement, Worth Beauty has suffered, and will continue to suffer, substantial damages.  Further, as a result of such infringement, Defendants have made unjust profits and ill-gotten gains from the marketing, promotion, distribution, and sale of their products. Worth Beauty is entitled to recover damages, including any and all profits Defendants have made as a result of its conduct.

**ANSWER:**   Defendants deny each and every allegation in Paragraph 103 of the Complaint.

104.    In addition, because Defendants' infringement is willful, the award of damages and profits should be trebled pursuant to 15 U.S.C. § 1117(a).

**ANSWER:**   Defendants deny each and every allegation in Paragraph 104 of the Complaint.

### COUNT V: COMMON LAW TRADEMARK INFRINGEMENT

105.    Worth Beauty refers to and incorporates herein the allegations in Paragraphs 1 through 104 above.

**ANSWER:**  Defendants hereby incorporate all previously stated admissions and denials as addressed to each specific allegation of the Second Amended Complaint, as set forth above.

106.    Defendants' advertisements, promotions, offers to sell, sales, and/or distribution of the infringing products, in direct competition with Worth Beauty, constitute trademark infringement in violation of federal and Texas common law. Defendants have marketed, promoted, distributed, offered for sale, and sold its Airtouch brush using Worth Beauty's

trademark, "A Revolution in Makeup Application." Although unregistered the mark is legally protectable. As a result of Defendants' unauthorized use of trademarks that are confusingly similar to Worth Beauty's trademark, the public is likely to believe that Defendants' products have been manufactured, approved by, or are affiliated with Worth Beauty and the blend**SMART** product lines.

**ANSWER:**   Defendants deny each and every allegation in Paragraph 106 of the Complaint.

107.   Defendants' unauthorized use of Worth Beauty's trademark and/or a colorable imitation thereof is likely to cause consumer confusion as to the origin and/or sponsorship/affiliation of its infringing products, at least by creating the false and misleading impression that its infringing products are manufactured by, authorized by, or otherwise associated with Worth Beauty. Defendants' unauthorized activities undermine Worth Beauty's goodwill and negatively impact Worth Beauty's ability to develop and promote the blend**SMART** brand and to have that brand associated exclusively with its own products.

**ANSWER:**   Defendants deny each and every allegation in Paragraph 107 of the Complaint.

108.   As a result of such infringement, Worth Beauty has suffered, and will continue to suffer, substantial damages. Further, as a result of such infringement, Defendants have made unjust profits and ill-gotten gains from the marketing, promotion, distribution, and sale of its products. Worth Beauty is entitled to recover at least Worth Beauty's damages, Defendants' profits, costs, and reasonable attorneys' fees.

**ANSWER:**   Defendants deny each and every allegation in Paragraph 108 of the Complaint.

## COUNT VI: COMMON LAW UNFAIR COMPETITION

109.    Worth Beauty refers to and incorporates herein the allegations in Paragraphs 1 through 108 above.

**ANSWER:**  Defendants hereby incorporate all previously stated admissions and denials as addressed to each specific allegation of the Second Amended Complaint, as set forth above.

110.    Defendants' conduct and actions set forth above constitute unfair competition in violation of the common law of Texas, at least by palming/passing off of Defendants' goods; by simulating Worth Beauty's trade dress in an intentional and calculated manner that is likely to cause consumer confusion as to origin and/or sponsorship/affiliation of Defendants' infringing products; by using similar trademarks, copyrights, marks, product packaging, product inserts and instructions, product descriptions, and other advertising, as described above, that is likely to cause consumer confusion as to origin and/or sponsorship/affiliation of Defendants' infringing products; and by creating the false and misleading impression that its infringing products are manufactured by, authorized by, or otherwise associated with Worth Beauty. Defendants have also interfered with Worth Beauty's business.

**ANSWER:**   Defendants deny each and every allegation in Paragraph 110 of the Complaint.

111.    As a result of such unfair competition, Worth Beauty has suffered damages and sustained injury to its goodwill and business reputation symbolized by Worth Beauty's intellectual property, including Worth Beauty's trade dress, trademarks, marks, copyrights, product packaging, product inserts and instructions, product descriptions, and other advertising, as described above. Defendants' unauthorized activities undermine Worth Beauty's goodwill and

negatively impact Worth Beauty's ability to develop and promote the its automated makeup brush systems.

**ANSWER:**   Defendants deny each and every allegation in Paragraph 111 of the Complaint.

112.   Defendants' use of Worth Beauty's trade dress and colorable imitations thereof, and Worth Beauty's Worth Beauty's trademarks, marks, copyrights, product packaging, product inserts and instructions, website content, product descriptions, and other advertising, as described above, has been intentional, willful, and malicious. Defendants' bad faith is evidence at least by the similarity of the infirming products to Worth Beauty's trade dress, as demonstrated above, by Defendants' use of similar, if not identical, trademarks, marks, copyrights, product packaging, product inserts and instructions, product descriptions, and other advertising, as described above, and by Defendants' continuing disregard for Worth Beauty's rights.

**ANSWER:**   Defendants deny each and every allegation in Paragraph 112 of the Complaint.

113.   Further, as a result of such infringement, Defendants have made unjust profits and ill-gotten gains from the marketing, promotion, distribution, and sale of its products by trading on the intellectual property associated with Worth Beauty's products, including Worth Beauty's trade dress, trademarks, marks, copyrights, product packaging, product inserts and instructions, product descriptions, and other advertising, as described above

**ANSWER:**   Defendants deny each and every allegation in Paragraph 113 of the Complaint.

114.   Worth Beauty is entitled to injunctive relief, and Worth Beauty is entitled to recover at least Defendants' profits, Worth Beauty's damages, punitive damages, costs, and

reasonable attorneys' fees.

**ANSWER:**   Defendants deny each and every allegation in Paragraph 114 of the Complaint.

## COUNT VII: COMMON LAW MISAPPROPRIATION

115.    Worth Beauty refers to and incorporates herein the allegations in Paragraphs 1 through 114 above.

**ANSWER:**  Defendants hereby incorporate all previously stated admissions and denials as addressed to each specific allegation of the Second Amended Complaint, as set forth above.

116.    Defendants' advertisements, promotions, offers to sell, sales, and/or distribution of the infringing products as described above, in direct competition with Worth Beauty Defendants' conduct and actions set forth above constitute common law misappropriation.

**ANSWER:**   Defendants deny each and every allegation in Paragraph 116 of the Complaint.

117.    Worth Beauty created its automated makeup brush systems through extensive time, labor, effort, skill, and money.  Defendants have wrongfully used Worth Beauty's products, and/or colorable imitations thereof, in competition with Worth Beauty and gained a special advantage because Defendant was not burdened with the expenses incurred by Worth Beauty. Defendants have wrongfully used Worth Beauty's trademark and trade dress, as described above. Defendants have commercially damaged Worth Beauty, at least by causing consumer confusion as to the origin and/or sponsorship/affiliation of Defendants' infringing products, by creating the false and misleading impression that its infringing products are manufactured by, authorized by, or otherwise associated with Worth Beauty, and by taking away sales that Worth Beauty would

have made.

> **ANSWER:** Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 117 and deny all remaining allegations in Paragraph 117 of the Complaint.

118.    Defendants' use of Worth Beauty's trade dress and trade mark, and colorable imitations thereof, has been intentional, willful, and malicious. Defendants' bad faith is evidence at least by the similarity of the infirming products to Worth Beauty's trade dress, as demonstrated above, by the similarity of Defendants' marks and trademarks to Worth Beauty's marks and trademark, as described above, and by Defendants' continuing disregard for Worth Beauty's rights.

> **ANSWER:**   Defendants deny each and every allegation in Paragraph 118 of the Complaint.

119.    Further, as a result of such infringement, Defendants have made unjust profits and ill-gotten gains from the marketing, promotion, distribution, and sale of its products by trading on the intellectual property associated with Worth Beauty's products.

> **ANSWER:**   Defendants deny each and every allegation in Paragraph 119 of the Complaint.

120.    Worth Beauty is entitled to injunctive relief, and Worth Beauty is entitled to recover at least Defendants' profits, Worth Beauty's damages, punitive damages, costs, and reasonable attorneys' fees.

> **ANSWER:**   Defendants deny each and every allegation in Paragraph 120 of the Complaint.

**COUNT VIII: TRADE DRESS DILUTION
UNDER TEX. BUS. & COM. CODE § 16.103**

121.    Worth Beauty refers to and incorporates herein the allegations in Paragraphs 1 through 120 above.

**ANSWER:**  Defendants hereby incorporate all previously stated admissions and denials as addressed to each specific allegation of the Second Amended Complaint, as set forth above.

122.    Defendants' offers to sell, sales, distribution, and/or advertisement of violate Section 16.103 of the TEXAS BUSINESS & COMMERCE CODE.

**ANSWER:**  Defendants deny each and every allegation in Paragraph 122 of the Complaint.

123.    Defendants' advertisements, promotions, offers to sell, sales, and/or distribution of the infringing products, in direct competition with Worth Beauty constitute common law trade dress infringement, at least because Defendants' use of Worth Beauty's trade dress and/or colorable imitations thereof is likely to cause consumer confusion as to the origin and/or sponsorship/affiliation of its infringing products, and at least by creating the false and misleading impression that its infringing products are manufactured by, authorized by, or otherwise associated with Worth Beauty.

**ANSWER:**  Defendants deny each and every allegation in Paragraph 123 of the Complaint.

124.    Worth Beauty's trade dress is entitled to protection under Texas law. Worth Beauty's trade dress includes, unique, distinctive, and non-functional designs. Worth Beauty has extensively and continuously promoted and used its trade dress in the United States and in Texas. Through that extensive and continuous use, Worth Beauty's trade dress has become a well-known indicator of the origin and quality of Worth Beauty's automated makeup brush systems.

Worth Beauty's trade dress has also acquired substantial secondary meaning in the marketplace in the United States and in Texas. Moreover, Worth Beauty's trade dress acquired this secondary meaning before Allstar commenced its unlawful use of Worth Beauty's trade dress in connection with the infringing products.

>    **ANSWER:**   Defendants deny each and every allegation in Paragraph 124 of the Complaint.

125.   Defendants' use of Worth Beauty's trade dress has caused and, unless enjoined, will continue to cause substantial and irreparable injury to Worth Beauty for which Worth Beauty has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Worth Beauty's trade dress with the blend**SMART** automated makeup brush systems.

>    **ANSWER:**   Defendants deny each and every allegation in Paragraph 125 of the Complaint.

126.   Defendants' use of Worth Beauty's trade dress and colorable imitations thereof has been intentional, willful, and malicious. Defendants' bad faith is evidence at least by the similarity of the infirming products to Worth Beauty's trade dress, as demonstrated above, and by Defendants' continuing disregard for Worth Beauty's rights.

>    **ANSWER:**   Defendants deny each and every allegation in Paragraph 126 of the Complaint.

127.   Further, as a result of such infringement, Defendants have made unjust profits and ill-gotten gains from the marketing, promotion, distribution, and sale of its products by trading on the intellectual property associated with Worth Beauty's products, including Worth Beauty's trade dress.

**ANSWER:** Defendants deny each and every allegation in Paragraph 127 of the Complaint.

128.     Worth Beauty is entitled to injunctive relief, and Worth Beauty is entitled to recover at least Defendants' profits, Worth Beauty's damages, punitive damages, costs, and reasonable attorneys' fees under at least TEX. BUS. & COM. CODE §16.104.

**ANSWER:** Defendants deny each and every allegation in Paragraph 128 of the Complaint.

<div align="center">

**COUNT IX: UNJUST ENRICHMENT**

</div>

129.     Worth Beauty refers to and incorporates herein the allegations in Paragraphs 1 through 128 above.

**ANSWER:** Defendants hereby incorporate all previously stated admissions and denials as addressed to each specific allegation of the Second Amended Complaint, as set forth above.

130.     Defendants have made unjust profits from the sale of its good by trading on the intellectual property associated with Worth Beauty's automated makeup brush system, including Worth Beauty's trade dress and trademark.

**ANSWER:**  Defendants deny each and every allegation in Paragraph 130 of the Complaint.

131.     Defendants' conduct and actions set forth above constitute unjust enrichment under the common law of Texas.

**ANSWER:** Defendants deny each and every allegation in Paragraph 131 of the Complaint.

132.     Worth Beauty is entitled to disgorgement of the unjust profits made by

Defendants.

**ANSWER:** Defendants deny each and every allegation in Paragraph 132 of the Complaint.

## COUNT X: COPYRIGHT INFRINGEMENT

133.    Worth Beauty refers to and incorporates herein the allegations in Paragraphs 1 through 132 above.

**ANSWER:**  Defendants hereby incorporate all previously stated admissions and denials as addressed to each specific allegation of the Second Amended Complaint, as set forth above.

134.    The actions and conduct of Defendants set forth above violate 18 U.S.C. § 501. Worth Beauty is the exclusive owner of the Worth Beauty Copyrights.

**ANSWER:** Defendants deny each and every allegation in Paragraph 134 of the Complaint.

135.    The Worth Beauty Copyrights were widely disseminated and published to the public before Defendants' infringement, through Worth Beauty's product instructions and inserts, and Defendants have had open and easy access to each of the Worth Beauty Copyrights. Defendants copied these works for its own use and financial benefit and gain without obtaining permission or license from Worth Beauty. Defendants knowingly and intentionally reproduced and copied the Worth Beauty Copyrights by manufacturing, importing, exporting, marketing, promoting, distributing, displaying and offering for sale and/or selling their infringing Airtouch Brush and utilizing product packaging, product descriptions, product instructions or inserts, graphics, website content and other advertising that is at a minimum, substantially similar to the

Worth Beauty Copyrights.

**ANSWER:** Defendants deny each and every allegation in Paragraph 135 of the Complaint.

136.    Defendants' acts of infringement have caused, and will continue to cause, damage to Worth Beauty, and are causing irreparable harm to Worth Beauty. Based on Defendants' wrongful conduct, Worth Beauty is entitled to recover its actual damages and Defendants' profits in an amount to be proven at trial, and its attorneys' fees and costs.

**ANSWER:** Defendants deny each and every allegation in Paragraph 136 of the Complaint.

<div align="center">

**JURY TRIAL**

</div>

137.    Pursuant to Fed. R. Civ. P. 38 and 39, Worth Beauty hereby demands a trial by jury.

**ANSWER:** Defendants admit that Plaintiff requests a trial by jury.

**VI.    PRAYER**

WHEREFORE, Plaintiff Worth Beauty LLC prays that the Court grant the following relief against Defendants Allstar Products Group LLC and Allstar Marketing Group, LLC:

A.    Judgment in favor of Plaintiff Worth Beauty LLC and against Defendants Allstar Products Group LLC, and Allstar Marketing Group, LLC;

B.    All damages sustained by Worth Beauty LLC in an amount to be determined at trial based on Defendants' infringement of Worth Beauty LLC's trademark, infringement of Worth Beauty's distinctive trade dress in overall appearance of its automated makeup brush systems and associated packaging and marketing, false designation of origins, descriptions, and

representation of their automated makeup brush, and acts of unfair competition against Worth Beauty LLC;

C.     Damages awarded under 15 U.S.C. § 1117(a) in the amount of total profits received by Defendants from, and any damages sustained by Worth Beauty LLC as a result of, Defendants' sales of products infringing Worth Beauty LLC's trademarks or trade dress, in an amount to be determined at trial;

D.     Enhanced damages awarded under 15 U.S.C. § 1117(a) up to three times the amount found as actual damages for Defendants' trademark and trade dress infringement and false designations of origins, descriptions, and representations in an amount to be determined at trial; Damages in the amount of total profits received by Defendants from, and any damages sustained by Worth Beauty LLC as a result of, Defendants' common law trade dress infringement, common law trademark infringement, unfair competition, and unjust enrichment in an amount to be determined at trial;

E.     Worth Beauty LLC's actual damages and the profits of Defendants that are attributable to the violations alleged herein pursuant to 17 U.S.C. § 504(b);

F.     Award of Interest and costs; and

G.     Such other and further relief as is just and proper.

**ANSWER:**  Defendants deny that Plaintiff is entitled to any relief whatsoever from or against Defendants, and Defendants specifically deny all of the allegations and prayers for relief contained in Section VI, sub-parts A through G of the Second Amended Original Complaint.

## B.     AFFIRMATIVE DEFENSES

Subject to the responses above, Defendants allege the following affirmative defenses to the Second Amended Original Complaint.

1.      Plaintiff has failed to state a claim upon which relief may be granted.

2.      Plaintiff's claims are barred, in whole or in part, by the applicable statute(s) of limitations.

3.      Defendants have not infringed and do not infringe upon Plaintiff's alleged trademark or trade dress or copyrights.

4.      Plaintiff's claims are barred by the doctrines of laches, waiver and/or estoppel.

5.      Plaintiff's claims are barred by the doctrine of unclean hands.

6.      Venue is not proper in this district and/or jurisdiction.

7.      Plaintiff has suffered no damage on account of any wrongful conduct by Defendants.

8.      Any trademark or trade dress infringement or copyright infringement by Defendants has been innocent infringement.

9.      Plaintiff's copyright claims are barred by the doctrine of independent creation.

10.     Plaintiff's claims are barred, in whole or in part, because Plaintiff has suffered no damages.

11.     Plaintiff's copyright claims are barred, in whole or in part, by the *Scenes A Faire* doctrine.

12.     Plaintiff's copyright claims are barred, in whole or in part, by the merger doctrine.

13.     Plaintiff cannot state a clam for trademark or trade dress infringement, unfair competition, false designation of origin or passing off because there is no likelihood of confusion.

14.     Plaintiff cannot state a clam for trademark infringement, unfair competition, false designation of origin, or passing off because Plaintiff's alleged mark is not distinctive and has not acquired secondary meaning.

15.     Plaintiff cannot state a clam for trade dress infringement because plaintiff's product design is purely functional.

16.     Plaintiff cannot state a clam for trade dress infringement because plaintiff's alleged trade dress has not acquired secondary meaning.

17.     Plaintiff cannot state a clam for trade dress dilution under Tex. Bus. & Com. Code because plaintiff's alleged trade dress is not famous.

18.     Plaintiff's federal and state claims premised upon its alleged trademarks are preempted by the Copyright Act.

19.     Plaintiff's trademark claims are barred by the doctrine of fair use.

20.     Plaintiff has no protectable trademark or trade dress rights.

21.     Plaintiff is not entitled to attorneys' fees under the Lanham Act because this case is not exceptional under 15 U.S.C. § 1117(a).

22.     Plaintiff is not entitled to attorneys' fees under the Copyright Act because it does not have a copyright registration that predates the alleged infringement.

23.     This Court does not have subject matter jurisdiction over Plaintiff's copyright claims to the extent that Plaintiff bases its copyright claims on unregistered copyrights because Plaintiff does not own copyright registrations and did not own copyright registrations at the time of filing the Complaint.

24.     In addition to the defenses set forth above, Defendants expressly reserve the right to allege additional defenses as they become known through the course of discovery and further factual investigation in this case.

## PRAYER FOR RELIEF

WHEREFORE, Defendants Allstar Products Group, LLC and Allstar Marketing Group, LLC, respectfully request that this Court:

(a)     Dismiss all claims asserted against them with prejudice;

(b)     Award Defendants their attorneys' fees, costs and disbursements pursuant to 15 U.S.C. §1117; and

(c)     Grant such further relief, in law and equity, as this Court deems just and appropriate.

## <u>ORIGINAL COUNTERCLAIM</u>

Pleading further, if further pleading is necessary, and without waiving the foregoing, Allstar Products Group, LLC and Allstar Marketing Group, LLC, Counter-Plaintiffs, assert the following counterclaims ("Original Counterclaim") against Counter-Defendant Worth Beauty LLC pursuant to Federal Rule of Civil Procedure 13.

### <u>The Parties</u>

1.     Counterclaim plaintiff, Allstar Products Group, LLC is as limited liability company duly organized and existing under and by virtue of the laws of the State of New York, with its principal place of businesses located at 2 Skyline Drive, Hawthorne, New York 10532.

2.     Counterclaim plaintiff, Allstar Marketing Group, LLC, is as limited liability company duly organized and existing under and by virtue of the laws of the State of New York, with its principal place of businesses located at 2 Skyline Drive, Hawthorne, New York 10532 (collectively with Allstar Products Group, LLC, the "Counterclaim Plaintiffs").

3.      Upon information and belief, counterclaim defendant, Worth Beauty, Inc. ("Worth Beauty") is a Virginia limited liability company with its principal place of business at 3101 Richmond Avenue, Suite 120, Houston, Texas 77098.

### Jurisdiction and Venue

4.      This Court has jurisdiction over Counterclaim Plaintiffs' counterclaims pursuant to  28 U.S.C. Section 1331, 28 U.S.C. Section 1338 and 28 U.S.C. Section 2201 *et seq.* as a declaratory judgment action for copyright invalidity arising under the Copyright Laws of the United States, 17 U.S.C. Section 102 *et seq.*

5.      Venue is proper under 28 U.S.C. Section 1391.

6.      The Court has personal jurisdiction over Worth Beauty because Worth Beauty's principal place of business is in Texas, it does business in this State and has availed itself of the jurisdiction of this Court by filing the Complaint in this matter.

### Counterclaim I:  Declaratory Judgment of Invalidity (Copyrights)

7.      Counterclaim Plaintiffs reallege and incorporate herein by reference paragraphs 1 through 6 above, as though fully set forth herein.

8.      Worth Beauty's registered and unregistered copyrights reflected in paragraphs 35 through 41 of the Second Amended Original Complaint ("Complaint"), in and related to the packaging, instructions, videos, and website for its blendSMART automated makeup brush, blendSMART brush heads, and accessories, including Service Request No. 1-5769375071, Service Request No. 1-4336903021, U.S. Copyright Reg. No. VA2-066-580,  Service Request No. 1-5769375195, Service Request No. 1-5769558494, Service Request No. 1-5779166711 and Service Request No. 1-5766150401 are invalid on the grounds that the subject work of these

55

copyrights does not satisfy the requisite level of originality required by Section 102 of the United

States Copyright Act, 17 U.S.C. Section 102 et seq.  [add in service request numbers]

9.      Counterclaim Plaintiffs are entitled to a declaratory judgment pursuant to 28

U.S.C. Section 2201 that the foregoing copyrights are invalid.

### Counterclaim II: Declaratory Judgment of Invalidity (Trademarks)

10.      Counterclaim Plaintiffs reallege and incorporate herein by reference paragraphs 1

through 9 above, as though fully set forth herein.

11.      Worth Beauty's unregistered trademarks alleged in paragraph 34 of the

Complaint, including "A Revolution in Makeup Application" and "Natural Looking Results with

Confidence" are invalid and/or not entitled to trademark protection on the grounds that they have

acquired no secondary meaning and are not distinctive.

12.      Counterclaim Plaintiffs are entitled to a declaratory judgment pursuant to 28

U.S.C. Section 2201 that the foregoing trademarks are invalid.

### Counterclaim III: Declaratory Judgment of Invalidity (Trade Dress)

13.      Counterclaim Plaintiffs reallege and incorporate herein by reference paragraphs 1

through 12 above, as though fully set forth herein.

14.      Worth Beauty's alleged trade dress alleged in paragraphs 22 – 30 and 78 of the

Complaint are invalid and/or not entitled to trade dress protection on the grounds that product

design is purely functional and has not acquired secondary meaning.

15.      Counterclaim Plaintiffs are entitled to a declaratory judgment pursuant to 28

U.S.C. Section 2201 that the foregoing trade dress is invalid.


### PRAYER FOR RELIEF

**WHEREFORE**, Defendants and Counterclaim Plaintiffs respectfully request that he Court enter judgment that:

A.      Plaintiff shall take nothing from this action;

B.      The Second Amended Original Complaint be dismissed in its entirety with prejudice;

C.      The claimed copyrights are invalid and/or unenforceable;

D.      The claimed trademarks are invalid and/or unenforceable;

E.      The claimed trade dress is invalid and/or unenforceable;

F.      This is an exceptional case as to the lack of merit in Plaintiff's claims under 15 U.S.C. § 1117(a), and Defendants/Counterclaim Plaintiffs shall be awarded their costs and reasonable attorneys' fees expended in defending this action and prosecuting their counterclaims; and

G.      Defendants/Counterclaim Plaintiffs shall be awarded such other and further relief as the Court deems just and proper.

Dated: February 23, 2018

<div style="margin-left:40%">

Respectfully submitted,

By:/s/ Dana M. Susman
   Dana M. Susman
    (Admitted *pro hac vice*)
   Adam M. Cohen
    (Application *pro hac vice to be filed*)
   Jonathan Sabin
    (Application *pro hac vice to be filed*)

   KANE KESSLER, P.C.
   666 Third Avenue
   New York, New York 10017
   Telephone:  (212) 519-5136
   Facsimile: (212) 245·3009
   Email: dsusman@kanekessler.com

</div>

55

Robert P. Latham
ATTORNEY-IN-CHARGE
State Bar No. 11975500
S.D. ID. No. 13142
JACKSON WALKER L.L.P.
2323 Ross Avenue, Suite 600
Dallas, TX  75201
Telephone: (214) 953-6095
Facsimile: (214) 661-6663
Email: blatham@jw.com

-and-

Jamila M. Brinson
State Bar No. 24074867
S.D. ID. 1127492
JACKSON WALKER, LLP
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone:  (713) 752-3246
Facsimile: (713) 308-4112
Email: jbrinson@jw.com

**ATTORNEYS FOR DEFENDANTS ALLSTAR PRODUCTS GROUP, LLC AND ALLSTAR MARKETING GROUP, LLC**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing instrument was filed electronically pursuant to Local Rule 5 and that a copy of this document was served upon all counsel of record pursuant to the Federal Rules of Civil Procedure and Local Rule 5 via the Court's CM/ECF on this 23rd day of February, 2018.

By:<u>/s/ Dana M. Susman</u>
     Dana M. Susman

55